**HINSON GRAVELLE & ADAIR LLP**
Douglas A. Gravelle (SBN 166110)
gravelle@hinsongravelle.com
K. Eric Adair (SBN 150650)
adair@hinsongravelle.com
28470 Avenue Stanford, Suite 350
Valencia, CA 91355
Telephone: 661-294-0116
FAX: 661-294-0134

Attorneys for Plaintiffs
BKK WORKING GROUP, an unincorporated
association, and individual members identified
below

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BKK WORKING GROUP; ANADARKO E&P ONSHORE LLC; ATLANTIC RICHFIELD COMPANY; ASHLAND LLC.; BAYER CROPSCIENCE INC.; BHPI SERVICE LLC; THE BOEING COMPANY; CALIFORNIA RESOURCES CORPORATION; CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY; CHEVRON MARINE PRODUCTS LLC; CONOCOPHILLIPS COMPANY; CROSBY & OVERTON, INC.; THE DOW CHEMICAL COMPANY; DUCOMMUN AEROSTRUCTURES, INC.; ESSEX CHEMICAL CORPORATION; EXXON MOBIL CORPORATION; GEMINI INDUSTRIES, INC.; GENERAL DYNAMICS CORPORATION; GENERAL LATEX AND CHEMICAL CORPORATION; HP INC. (FORMERLY KNOWN AS HEWLETT-PACKARD COMPANY); AMERICAN | Case No. 2:18-cv-05836-MWF-PLA<br><br>**THIRD MOTION TO STAY AND EXTEND TIME TO SERVE DEFENDANTS**<br><br>[Declarations of Douglas Gravelle, James Potter and Richard Hume, and [Proposed] Order, filed concurrently herewith] |

1

1   HONDA MOTOR CO., INC.;
2   HUNTINGTON BEACH
    COMPANY; LOCKHEED
3   MARTIN CORPORATION;
    MARS, INC. (FORMERLY
4   KNOWN AS KAL KAN FOODS
    INC.); MONTROSE CHEMICAL
5   CORPORATION OF
    CALIFORNIA; MORTELL
6   COMPANY; MORTON
    INTERNATIONAL, INC.;
7   NATIONAL STEEL AND
8   SHIPBUILDING COMPANY;
    NORTHROP GRUMMAN
9   SYSTEMS CORPORATION; OXY
    USA, INC.; QUEMETCO, INC.;
10  ROCKWELL AUTOMATION,
    INC.; ROHM & HAAS
11  COMPANY; ROHR, INC.; SAN
    DIEGO GAS & ELECTRIC
12  COMPANY; SMITH
    INTERNATIONAL, INC.;
13  SOUTHERN CALIFORNIA
14  EDISON COMPANY;
    SOUTHERN CALIFORNIA GAS
15  COMPANY; STAUFFER
    MANAGEMENT COMPANY
16  LLC; THE PROCTER &
17  GAMBLE MANUFACTURING
    COMPANY; THUMS LONG
18  BEACH COMPANY; UNION
    CARBIDE CORPORATION;
19  UNION PACIFIC
    RAILROAD/SOUTHERN
20  PACIFIC TRANSPORTATION
21  COMPANY; UNITED STATES
    STEEL CORPORATION;
22  UNITED TECHNOLOGIES
    CORPORATION; AND UNIVAR
23  USA INC.,
24
25              Plaintiffs,
26       vs.
27
    ALBERTSONS COMPANIES, INC.;
28  ALCO INDUSTRIES, INC.;

                    2

ALLERGAN, INC.; AMERICAN CAN COMPANY; AMPEX CORP.; ANCO METAL IMPROVEMENT CO.; ARDAGH GROUP S.A.; ARGO PETROLEUM CORP.; AURUM INDUSTRIES, INC.; BARRY WRIGHT CONTROLS; BEAULIEU OF AMERICA, INC.; BIRTCHER PACIFIC; BROWNING FERRIS INDUSTRIES; BFI XV REALTY FUND LTD.; BYRON JACKSON PUMPS, INC.; CAROL CABLE CO.; CARLTON FORGE WORKS; CIBA GEIGY CORP.; CLEVELAND WRECKING CO.; COLUMBIA PICTURES; COOPER INDUSTRIES, INC.; COTY, INC.; CROWLEY INC.; DESOTO INC.; DON KNOTT FORD; DRESSER INDUSTRIES, INC.; DUREX INC.; ELECTROFILM INC.; EMHART INDUSTRIES, INC.; FASSON CORP.; FEDERAL-MOGUL CORP.; FEDERAL-MOGUL LLC; FEDERAL RESERVE BANK; FRICTION INC.; FRICTION MATERIALS CORP.; FMC CORPORATION; FORD AEROSPACE AND COMMUNICATIONS CORP.; FORD MOTOR COMPANY; FOSTER-FORBES GLASS CO.; GENERAL MILLS, INC.; GLASS CONTAINERS CORP.; GENSTAR BUILDING MATERIALS CO.; GENSTAR ROOFING PRODUCTS COMPANY, INC.; GKN AEROSPACE CHEM-TRONICS INC.; GLOBAL TUBE CORPORATION; GWB (US), INC.; HILL BROTHERS CHEMICAL CO.; HI-SHEAR CORP.; HOLLYTEX CARPET MILLS, INC.; HOUGHTON INTERNATIONAL INC.; JEFFRIES BANK NOTES CO.; JOHNSON CONTROLS INC.; JOSLYN MANUFACTURING & SUPPLY CO.; KAISER FOUNDATION HEALTH PLAN, INC.; LISI AEROSPACE

3

1   NORTH AMERICA, INC.; LONG
2   BEACH TERMINAL COMPANY;
    MAX FACTOR CO.; MERCURY
3   AEROSPACE INC.; MERCURY
    AEROSPACE FASTENERS; MRC
4   HOLDINGS, INC.; NORTH
    AMERICAN ENVIRONMENTAL;
5   NORTHROP PACIFIC; OWENS-
    ILLINOIS, INC.; PARAMOUNT
6   PICTURES CORP.; PILLSBURY CO.;
    PRICE PFISTER *NKA* PFISTER;
7   REPUBLIC SERVICES, INC.; RIO
    TINTO ALCAN INC.; SANDIA
8   METAL PROCESS, INC.; SANMINA-
    SCI CORP.; SEQUA
9   CORPORATION; SHUWA
    INVESTMENTS CORP.;
10  SIERRACIN; SIKA CORP.; SMITH &
    CO.; SPS TECHNOLOGIES, INC.;
11  STANLEY BLACK & DECKER,
    INC.; STANLEY WORKS;
12  STRUCTURAL COMPOSITE
    INDUSTRIES; SUMITOMO LIFE
13  REALTY; SYNTHANE TAYLOR;
    TECHNICOLOR, INC.; THOMPSON
14  INDUSTRIES; THORPE
    INSULATION CO.; TTM
15  TECHNOLOGIES, INC.; VOUGHT
    AIRCRAFT INDUSTRIES INC.; and
16  DOES 1-10,

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

THIRD MOTION TO STAY
(2:18-CV-05836-MWF-PLA)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The BKK Working Group, also known as the BKK Joint Defense Group – an unincorporated association of entities of the type described in Federal Rule of Civil Procedure 17(b)(3)(A) and Cal. Code of Civil Procedure § 369.5 comprised of the individual Plaintiffs in this action, as identified in Attachment A ("BKK Working Group" or "Plaintiffs") - has been cooperating with the State of California through its agency, the Department of Toxic Substances Control ("DTSC"), to investigate and remediate the conditions at the BKK Class I Landfill in West Covina, California (hereinafter referred to as "BKK Class I Facility").  In this action, Plaintiffs seek cost recovery and contribution from at least 87 Defendants named in the First Amended Complaint pursuant to Sections 107(a) and 113(f) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq*. ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9613(f) and the California Hazardous Waste and Hazardous Substances Account Act, Health & Safety Code Sections 25300, *et seq*., for past and future response costs incurred and to be incurred by Plaintiffs for response activities undertaken and to be undertaken at the BKK Class I Facility, along with a declaration as to each Defendant's liability and an allocation of past and future response costs.  Plaintiffs also seek complete or partial indemnity from Defendants for all response costs incurred or to be incurred at the BKK Class I Facility, pursuant to the doctrine of equitable indemnification.

On May 13, 2019, the Court granted Plaintiffs' Second Motion to Stay and Extend Time to Serve Defendants [D.E. 40].  The Court's Order stayed this case until July 20, 2020 for all matters except voluntary dismissals of certain named Defendants by Plaintiffs and extended the time for Plaintiffs to serve the First Amended Complaint on all remaining Defendants until July 20, 2020.  Per the Court's Order, Plaintiffs have been filing status reports with the Court every 90 days.

Plaintiffs have made significant progress since this Court entered a second further stay and extension of time to serve the First Amended Complaint. Namely, Plaintiffs and DTSC have cooperatively worked to finalize a comprehensive settlement package for potentially responsible parties ("PRPs") at the Class I Facility, including certain Defendants. As part of this settlement package, Plaintiffs and DTSC finalized a Second Disbursement Amendment to the Third Consent Decree which, among other things, provides the terms for a creation of an Escrow Account, the mechanics of how and when settlement proceeds will be deposited into the Escrow Account, and sets forth terms for the management of the funds in the account. In addition, the Plaintiffs entered into additional tolling agreements with various Defendants and have dismissed those Defendants without prejudice from this lawsuit (37 of the 87 named Defendants have signed tolling agreements and been dismissed without prejudice). Plaintiffs are also in ongoing negotiations with several other Defendants about dismissing such Defendants without prejudice if they too sign a tolling agreement. Though Plaintiffs have made significant progress as outlined in these moving papers, the impact of COVID-19 has significantly delayed much of the work being conducted by both Plaintiffs and DTSC. As discussed later in this Motion, various state and local orders have mandated working from home and closed many public spaces. Therefore, additional time is necessary for Plaintiffs to continue to work with DTSC to finalize the settlement packages.

Plaintiffs now respectfully move for a Court Order that continues the Court's stay for all proceedings in this case except for dismissal notices and further extends the time for Plaintiffs to serve their First Amended Complaint until July 20, 2021. Plaintiffs request such further stay and extension of time to serve Defendants so that Plaintiffs may continue their settlement negotiations with the remaining named Defendants and continue dismissing settling Defendants and/or otherwise non-viable Defendants, which will streamline this litigation and preserve judicial and party resources.

1    Plaintiffs further note that on July 2, 2018 (the day before this action was
2    filed), Plaintiffs filed a related case, captioned *BKK Working Group, et al. v. 1700*
3    *Santa Fe Ltd., et al.*, Case No. 2:18-CV-05810-MWF-PLA, which is also currently
4    pending before this Court.  This case and that related case involve the same
5    questions of law and fact, the same plaintiffs (with a few minor exceptions), and the
6    operative First Amended Complaints in both cases assert identical causes of action
7    based on identical facts.  The only material difference between the two actions is
8    the defendants' identities (there are approximately 1,000 defendants in the related
9    case).  A few days ago the Court further extended the stay in that related case one
10   more year to July 20, 2021.  Thus, granting the requesting relief in this Motion
11   would also track the stay in effect in that other related case.

12   **II.     STATEMENT OF FACTS**

13   On July 3, 2018, Plaintiffs filed their Complaint in this case against 87 named
14   Defendants (Dkt. No. 1).  This is a civil action for cost recovery under Section 107(a)
15   and an action for contribution under Section 113 of CERCLA, relating to the release
16   and/or threatened release of hazardous substances, as that term is defined in section
17   101(14) of CERCLA, 42 U.S.C. § 9601 ("Hazardous Substances") from the BKK
18   Class I Facility.  Each of the parties named as a Defendant generated, transported
19   and/or arranged for disposal of materials containing Hazardous Substances to the
20   BKK Facility. (Dkt. No. 14 at ¶¶ 61-148).

21   Plaintiffs have been cooperating with DTSC to investigate and remediate the
22   conditions at the BKK Class I Facility through three judicially-approved consent
23   decrees – the First, Second, Third Partial, and Amended Third Partial Consent
24   Decrees.  *See* Declaration of Douglas Gravelle ("Gravelle Decl.") at ¶ 3; Declaration
25   of James Potter ("Potter Decl.") at ¶¶ 3-5; Declaration of Richard Hume ("Hume
26   Decl.") ¶ 8.  Under these Consent Decrees, the individual Members of the BKK
27   Working Group, which now consists of approximately 50 members, have been
28   conducting necessary response activities at the BKK Class I Facility consistent with

1    the National Contingency Plan, 40 C.F.R. Part 30 *et seq*. ("NCP").  *Id.*  As a result,

2    the BKK Working Group, through its individual Members, has incurred (or is

3    committed to incur) nearly $250 million to date in necessary response costs at the

4    BKK Class I Facility. Gravelle Decl. at ¶ 3.  In this action, Plaintiffs seek to require

5    Defendants to contribute their fair share of these costs and of future response costs to

6    address releases and threatened releases of Hazardous Substances from the BKK

7    Class I Facility.  In addition to addressing conditions at the BKK Class I Facility,

8    Plaintiffs have been working with DTSC to identify other PRPs at the BKK Class I

9    Facility. Gravelle Decl. ¶ 4.  As a result of such efforts, Plaintiffs have identified over

10   ten thousand PRPs that generated, transported and/or arranged for disposal of

11   materials containing Hazardous Substances to the BKK Class I Facility. *Id.*  The

12   BKK Working Group has entered into tolling agreements with a number of these

13   identified PRPs and intends to pursue settlement with these PRPs.[1] (Dkt. No. 14 at ¶

14   1103). *Id.*

15          The 87 Defendants originally named in Plaintiffs' Complaint had refused to

16   enter into tolling agreements with Plaintiffs at the time this action was filed.

17   Gravelle Decl. at ¶ 5.  Accordingly, due to the applicable statutes of limitations for

18   Plaintiffs' claims under both Sections 107 and 113 of CERCLA, Plaintiffs timely

19   filed this action on July 3, 2018 in order to preserve their claims against these

20   Defendants. *Id.*  However, Plaintiffs' intent with respect to these Defendants was

21   always to coordinate with DTSC on settlement negotiations and settlement offers to

22   all viable entities. *Id.*  Accordingly, a further stay and extension of time to serve

23   Plaintiffs' First Amended Complaint on the remaining Defendants until July 20,

24   2021 will allow Plaintiffs to continue these settlement and dismissal efforts, in an

25   effort to minimize the number of Defendants against whom active litigation may be

26   necessary.

27   _____

28   [1] Plaintiffs intend to enter into settlement negotiations with these tolled PRPs and
     do not anticipate the need at this time to include them in this or the related lawsuit.

THIRD MOTION TO STAY
(2:18-CV-05836-MWF-PLA)

### III. A FURTHER STAY AND EXTENSION OF TIME FOR SERVICE WOULD ALLOW ADDITIONAL SETTLEMENT NEGOTIATIONS AND VOLUNTARY DISMISSALS

Since filing their Complaint, Plaintiffs have entered into tolling agreements with 37 of the named Defendants in this action and voluntarily dismissed these Defendants from this action. Gravelle Decl. at ¶ 6. Consistent with their original intention, as Plaintiffs locate Defendants they are continuing to send requests to Defendants, advising them that if they sign a tolling agreement, they too will be dismissed from the action without prejudice. Gravelle Decl. at ¶ 7. Currently, Plaintiffs are in negotiations with several Defendants about dismissing them from this action without prejudice, and additional dismissals of Defendants are anticipated. *Id.* However, due to the number of Defendants, the need to engage in often time-consuming efforts to determine any presently-existing successors-in-interest for many of the named Defendants, the age of the records, the need to coordinate with DTSC, and the impact of COVID-19 on the settlement process, additional time is necessary to conduct this process. *Id.*

The United States Supreme Court recently reaffirmed the importance of settlements in the CERCLA process. *Atlantic Richfield Company v. Christian*, No. 17-1498 (2020). "Settlements are at the heart of the Superfund process" and CERCLA itself commands government agencies to proceed by settlement whenever possible. *Id*; 42 U.S.C. § 9622(a) (proceed by settlement whenever possible "in order to expedite effective remedial actions and minimize litigation."). Here, a stay will further the ultimate goal of settlement and voluntary dismissal for Defendants.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment which must weigh competing interests and maintain an even balance." *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936); *see also Johnson v. Inos*, 619 Fed. Appx. 651 (2015).

There is ample precedent for extensions of this magnitude, particularly in large CERCLA cases, including in prior litigation involving the BKK Working Group. Certain of the Plaintiffs, as Members of the BKK Working Group, were previously involved in a CERCLA case of this type in the United States District Court for the District of Columbia.[2] Gravelle Decl. at ¶ 8.  In that case, at said Plaintiffs' request, the District Court granted an extension of time for service of the complaint for several years beyond the 90-day period provided for under Rule 4(m) of the Federal Rules of Civil Procedure, to allow said plaintiffs to negotiate and finalize a settlement with the defendants. *See id.; BKK Joint Defense Group, et al. v. FDIC*, Civil Action No. 09-948 (CKK).  Settlement was successfully obtained, obviating the need for active discovery and litigation in that case and resulting in the contribution of $86 million toward investigation and cleanup of the BKK Class I Facility (including an additional $1 million to United States EPA).[3]  Gravelle Decl. at ¶ 8.

Other federal courts have similarly granted such motions for stay and extensions of time for plaintiffs to serve their complaints in complex, multi-party environmental lawsuits such as this. *See, e.g.*, *Chemetco Site PRP Grp. v. A Square Systems, Inc.*, Civil Action No. 18-179-SMY-SCW (Illinois District Court granting plaintiff PRP group's motion for stay and extension of time to serve defendants for a period of one year in a CERCLA cost recovery and contribution action); *see also Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1071 (9th Cir. 2006).

---

[2] This lawsuit was filed in the DC District Court because the Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank, was a defendant in the litigation.

[3] The FDIC and JP Morgan Chase Bank, NA ultimately settled with both the BKK Working Group, DTSC, and United States Environmental Protection Agency for $87 million.  These settlements were approved by the Court in the Central District of California.

## IV. PLAINTIFFS HAVE BEEN COOPERATING WITH DTSC TO DEVELOP A JOINT FRAMEWORK FOR SETTLEMENT WITH DEFENDANTS AND OTHER PRPS

In addition to their efforts relating to voluntarily dismissing named Defendants who execute tolling agreements, Plaintiffs have also been diligently working with DTSC to develop a joint strategy for pursuing and implementing settlements with Defendants and other PRPs. Gravelle Decl. at ¶ 9; Potter Decl. at ¶ 8; Hume Decl. at ¶ 9.  These efforts include: (A) finalizing settlement packages for Defendants and other PRPs; (B) finalizing the Second Disbursement Amendment to the Third Consent Decree; and (C) finalizing a framework for communicating settlement offers to small volume PRPs, *i.e.*, those PRPs that DTSC determines are *de minimis* as defined in CERCLA section 122(g). Gravelle Decl. at ¶¶ 9-11; Potter Decl. at ¶¶ 8-11; Hume Decl. at ¶¶ 9-11.  Such coordinated efforts between Plaintiffs and the State of California will ensure that Defendants receive contribution protection with respect to further remediation and investigation of the BKK Class I Facility.  Though Plaintiffs have made significant progress as outlined in these moving papers, the impact of COVID-19 has effectively paused much of the work being conducted by both Plaintiffs and DTSC.

### A.    Settlement Packages

Plaintiffs are working cooperatively with DTSC to develop comprehensive settlement packages for PRPs at the Class I Facility, including Defendants. Gravelle Decl. at ¶ 9; Potter Decl. at ¶¶ 8-9; Hume Decl. at ¶ 9.  During the last few months, Plaintiffs and DTSC have made significant progress, going so far as to finalize several key documents including the Second Disbursement Amendment at the end of February 2020. Gravelle Decl. at ¶ 10; Potter Decl. at ¶ 11.  Following this finalization, Plaintiffs and DTSC intended to send the settlement package to thousands of PRPs, including the Defendants, in an organized and systematic fashion. Gravelle Decl. at ¶ 9.  To ensure that DTSC can timely respond to all PRPS, including the Defendants, DTSC and Plaintiffs expect to send the settlement packages out in

waves over the course of a few years. *Id*.  There are several benefits in working with the State of California to complete this process.  Importantly, it allows settling Defendants to obtain settlement protections generally provided by the government in CERCLA settlements, such as contribution protection (thus creating an extra incentive to settle as opposed to engaging in active litigation). *Id*.  As explained in Section IV, Subsection D, this process has effectively been put on hold due to the COVID-19 pandemic.

### B.   Second Disbursement Amendment to the Third Consent Decree

To facilitate potential settlements from Defendants and other PRPs, DTSC and Plaintiffs have negotiated and finalized a Second Disbursement Amendment to the Third Consent Decree ("Second Disbursement Amendment"). Gravelle Decl. at ¶ 10; Potter Decl. at ¶ 11.  This Amendment deals with the collection of settlement proceeds and the deposit of these proceeds in various accounts, including an Escrow Account. *Id*.  The Second Disbursement Amendment provides the mechanics of how and when settlement proceeds will be deposited into the Escrow Account, as well as the management of the funds in the account. *Id*.  Plaintiffs and DTSC have finalized the Second Disbursement Amendment and obtained the signatures from the BKK Working Group Members and DTSC.   However, the Second Disbursement Amendment is subject to public comment and then must be submitted to the Central District Court for approval. Potter Decl. at ¶ 13.  As explained in Section IV, Subsection D, this process has been significantly delayed due to the COVID-19 pandemic. *See also, id* at ¶ 12.   Therefore, while the Second Disbursement Amendment is finalized and executed, the settlement process cannot proceed until the document can be lodged and approved by the Central District Court.

### C.   *De Minimis* Settlements

DTSC and Plaintiffs have also been working to finalize a framework for communicating settlement offers to small volume PRPs. Gravelle Decl. at ¶ 11; Potter Decl. at ¶ 10; Hume Decl. at ¶¶ 10-11.  The small volume parties are those

THIRD MOTION TO STAY
(2:18-CV-05836-MWF-PLA)

1    PRPs that DTSC will determine are *de minimis* as defined in CERCLA section

2    122(g). Gravelle Decl. at ¶ 11.  In addition to preparing and finalizing the actual

3    settlement agreement, DTSC and Plaintiffs have drafted a settlement letter that will

4    accompany the agreement. Potter Decl. at ¶ 10; Hume Decl. at ¶¶ 10-11.  Moreover,

5    Plaintiffs and DTSC are in the process of finalizing the mechanics for contacting the

6    *de minimis* parties, addressing questions from the *de minimis* parties regarding

7    volumetric allocation or other issues, and developing a website to provide additional

8    information to *de minimis* parties and the public. Hume Decl. at ¶ 11.  As explained

9    in Section IV, Subsection D, this process has been slowed due to the COVID-19

10   pandemic. *See also, id.* at ¶ 12.

11        DTSC and its counsel in the California Department of Justice agree with

12   Plaintiffs    that    the    "process    of    negotiating    settlements    with    the

13   *de minimis* parties will be greatly complicated if the BKK Working Group is

14   simultaneously engaged in active litigation against the *de minimis* PRPs." Potter

15   Decl. at ¶ 2, 14; *see also* Hume Decl. at ¶ 13 (" Based on conversations with my staff,

16   DTSC counsel, and representatives of the BKK Working Group, I believe that active

17   litigation in the BKK Working Group's pending contribution actions would interfere

18   with and slow down the joint initiative to reach settlements with *de minimis* PRPs.").

19   Hence, Plaintiffs seek to enter settlements with as many *de minimis* parties as possible

20   before actively litigating claims against any *de minimis* parties that refuse to settle.

21        **D.    Impact of COVID-19**

22        As Plaintiffs and DTSC continued to work on finalizing the aforementioned

23   settlement packages in late-February 2020, the COVID-19 pandemic dramatically

24   impacted the State of California.  The Centers for Disease Control and Prevention,

25   as well as various state and local officials, issued restrictions and guidance related

26   to the COVID-19 pandemic, which created serious practical concerns and

27   significantly slowed the finalization process.  For example, on March 19, 2020,

28   Governor Gavin Newsom issued Executive Order N-33-20, which ordered "all

THIRD MOTION TO STAY
(2:18-CV-05836-MWF-PLA)

1    individuals living in the State of California to stay at home or at their place of

2    residence except as needed to maintain continuity of operations of the federal

3    critical infrastructure sectors." Governor Newsom's Order remains effective as of

4    today's date. *See also*, Safer at Home Order for Control of COVID-19, available at

5    https://covid19.lacounty.gov/wp-content/uploads/HOO_Safer-at-Home-Order-for-

6    Control-of-COVID_04102020.pdf.  The Central District of California has also been

7    impacted and has taken precautions "to protect public health" and "to reduce the

8    size of public gatherings and reduce unnecessary travel" such as holding hearings

9    by video or by telephonic conference, limiting entrance to courthouses, and

10   teleworking. Order of the Chief Judge No. 20-05.

11            To this point, as part of the finalization process of the Second Disbursement

12   Amendment to the Third Consent Decree, DTSC will submit the amendment for

13   public comment.  Normally, this process would include making the amendment

14   available at a public library, in the vicinity of the BKK Class I Facility, so that the

15   public could read and comment. Gravelle Decl. at ¶ 12.  Due to the aforementioned

16   various state and local orders requiring closure of public spaces like the local library,

17   the public comment period will be extended from 30 to 60 days. Potter Decl. at ¶ 13.

18   At the earliest, and pending further developments, this public comment period will

19   start at the end of May. *Id*.  Further, collecting signatures from Plaintiffs was

20   complicated and time consuming, as many companies directed their employees to

21   begin working from home. Gravelle Decl. at ¶ 12.  Some personnel lacked the

22   technology to complete the necessary signature process, which caused delays on the

23   finalization of the Second Disbursement Amendment. *Id*.  Additionally, the

24   mechanics of finalizing and compiling hundreds of settlement packages would be

25   greatly complicated while technical staff and counsel for DTSC and Plaintiffs are

26   working from home. Gravelle Decl. at ¶ 12; Hume Decl. at ¶ 12.

27

28

## V.    CONCLUSION

Plaintiffs respectfully submit that judicial economy is best served in this very large multi-party CERCLA case through an additional stay for one year until, July 20, 2021 to allow Plaintiffs, in coordination with DTSC, to continue to meaningfully engage in settlement negotiations, make settlement offers, and otherwise dispose of as many named Defendants as possible.  The additional stay would also ensure procedural consistency between this case and the related case *BKK Working Group, et al. v. 1700 Santa Fe Ltd., et al*., Case No. 2:18-cv-05810-MWF-PLA, in which the Court also recently extended the stay in that case to July 20, 2021.

In addition, and consistent with the requested stay, Plaintiffs respectfully request that the Court allow Plaintiffs a further extension of time to July 20, 2021 to serve their First Amended Complaint, so that Plaintiffs have the opportunity to present settlement offers and/or dismiss as many parties as possible before setting a Scheduling Order and placing the case in an active discovery and litigation posture. This request mirrors the stay relief recently granted by the Court in the related case.

During the requested stay, Plaintiffs will continue their efforts to settle with as many Defendants as possible and do not plan on filing any pleadings other than voluntary dismissal notices of settling and non-viable Defendants under Federal Rules of Civil Procedure 41(A)(1)(a). Gravelle Decl. at ¶ 12.  In addition, Plaintiffs will continue to provide periodic (90 day) updates on their efforts to the Court.

Plaintiffs make this Motion in good faith and not for the purpose of causing any unnecessary delay in this case, but rather to promote judicial economy and potentially reach resolution with the remaining Defendants informally without the need of wasteful expense of the Court's resources.

1    Dated: May 6, 2020                    HINSON GRAVELLE & ADAIR LLP

2

3                                    By   /s/ Douglas A. Gravelle
                                         Douglas A. Gravelle,
4                                        Attorneys for Plaintiffs
                                         BKK WORKING GROUP, an
5                                        unincorporated association, and
                                         individual members identified
6                                        above

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   12          THIRD MOTION TO STAY
                                               (2:18-CV-05836-MWF-PLA)

1                       ATTACHMENT A

2                         PLAINTIFFS

3   BKK WORKING GROUP

4   ANADARKO E&P ONSHORE LLC

5   ATLANTIC RICHFIELD COMPANY

6   ASHLAND LLC.

7   BAYER CROPSCIENCE INC.

8   BHPI SERVICE LLC

9   THE BOEING COMPANY

10  CALIFORNIA RESOURCES CORPORATION

11  CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY

12  CHEVRON MARINE PRODUCTS LLC

13  CONOCOPHILLIPS COMPANY

14  CROSBY & OVERTON, INC.

15  THE DOW CHEMICAL COMPANY

16  DUCOMMUN AEROSTRUCTURES, INC.

17  ESSEX CHEMICAL CORPORATION

18  EXXON MOBIL CORPORATION

19  GEMINI INDUSTRIES, INC.

20  GENERAL DYNAMICS CORPORATION

21  GENERAL LATEX AND CHEMICAL CORPORATION

22  HP INC. (FORMERLY KNOWN AS HEWLETT-PACKARD COMPANY)

23  AMERICAN HONDA MOTOR CO., INC.

24  HUNTINGTON BEACH COMPANY

25  LOCKHEED MARTIN CORPORATION

26  MARS, INC. (FORMERLY KNOWN AS KAL KAN FOODS INC.)

27  MONTROSE CHEMICAL CORPORATION OF CALIFORNIA

28  MORTELL COMPANY

1  MORTON INTERNATIONAL, INC.

2  NATIONAL STEEL AND SHIPBUILDING COMPANY

3  NORTHROP GRUMMAN SYSTEMS CORPORATION

4  OXY USA, INC.

5  QUEMETCO, INC.

6  ROCKWELL AUTOMATION, INC.

7  ROHM & HAAS COMPANY

8  ROHR, INC.

9  SAN DIEGO GAS & ELECTRIC COMPANY

10  SMITH INTERNATIONAL, INC.

11  SOUTHERN CALIFORNIA EDISON COMPANY

12  SOUTHERN CALIFORNIA GAS COMPANY

13  STAUFFER MANAGEMENT COMPANY LLC

14  THE PROCTER & GAMBLE MANUFACTURING COMPANY

15  THUMS LONG BEACH COMPANY

16  UNION CARBIDE CORPORATION

17  UNION PACIFIC RAILROAD/SOUTHERN PACIFIC

18  TRANSPORTATION COMPANY

19  UNITED STATES STEEL CORPORATION

20  UNITED TECHNOLOGIES CORPORATION

21  UNIVAR USA INC.

22  AMERON INTERNATIONAL CORPORATION

23

24

25

26

27

28