**HINSON GRAVELLE & ADAIR LLP**
Douglas A. Gravelle (SBN 166110)
gravelle@hinsongravelle.com
K. Eric Adair (SBN 150650)
adair@hinsongravelle.com
28470 Avenue Stanford, Suite 350
Valencia, CA 91355
Telephone: 661-294-0116
FAX: 661-294-0134

Attorneys for Plaintiffs
BKK WORKING GROUP, an unincorporated association, and individual members identified below

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BKK WORKING GROUP; ANADARKO E&P ONSHORE LLC; ATLANTIC RICHFIELD COMPANY; ASHLAND LLC.; BAYER CROPSCIENCE INC.; BHPI SERVICE LLC; THE BOEING COMPANY; CALIFORNIA RESOURCES CORPORATION; CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY; CHEVRON MARINE PRODUCTS LLC; CONOCOPHILLIPS COMPANY; CROSBY & OVERTON, INC.; THE DOW CHEMICAL COMPANY; DUCOMMUN AEROSTRUCTURES, INC.; ESSEX CHEMICAL CORPORATION; EXXON MOBIL CORPORATION; GEMINI INDUSTRIES, INC.; GENERAL DYNAMICS CORPORATION; GENERAL LATEX AND CHEMICAL CORPORATION; HP INC. (FORMERLY KNOWN AS HEWLETT-PACKARD COMPANY); AMERICAN | Case No. 2:18-cv-05836-MWF-PLA<br><br>**DECLARATION OF JAMES POTTER IN SUPPORT OF THIRD MOTION TO STAY AND EXTEND TIME TO SERVE DEFENDANTS** |

i

| | |
|---|---|
| 1 | HONDA MOTOR CO., INC.; HUNTINGTON BEACH COMPANY; LOCKHEED MARTIN CORPORATION; MARS, INC. (FORMERLY KNOWN AS KAL KAN FOODS INC.); MONTROSE CHEMICAL CORPORATION OF CALIFORNIA; MORTELL COMPANY; MORTON INTERNATIONAL, INC.; NATIONAL STEEL AND SHIPBUILDING COMPANY; NORTHROP GRUMMAN SYSTEMS CORPORATION; OXY USA, INC.; QUEMETCO, INC.; ROCKWELL AUTOMATION, INC.; ROHM & HAAS COMPANY; ROHR, INC.; SAN DIEGO GAS & ELECTRIC COMPANY; SMITH INTERNATIONAL, INC.; SOUTHERN CALIFORNIA EDISON COMPANY; SOUTHERN CALIFORNIA GAS COMPANY; STAUFFER MANAGEMENT COMPANY LLC; THE PROCTER & GAMBLE MANUFACTURING COMPANY; THUMS LONG BEACH COMPANY; UNION CARBIDE CORPORATION; UNION PACIFIC RAILROAD/SOUTHERN PACIFIC TRANSPORTATION COMPANY; UNITED STATES STEEL CORPORATION; UNITED TECHNOLOGIES CORPORATION; AND UNIVAR USA INC., |
| | Plaintiffs, |
| | vs. |
| | ALBERTSONS COMPANIES, INC.; ALCO INDUSTRIES, INC.; |

| | |
|---|---|
| 1 | ALLERGAN, INC.; AMERICAN CAN COMPANY; AMPEX CORP.; ANCO METAL IMPROVEMENT CO.; ARDAGH GROUP S.A.; ARGO PETROLEUM CORP.; AURUM INDUSTRIES, INC.; BARRY WRIGHT CONTROLS; BEAULIEU OF AMERICA, INC.; BIRTCHER PACIFIC; BROWNING FERRIS INDUSTRIES; BFI XV REALTY FUND LTD.; BYRON JACKSON PUMPS, INC.; CAROL CABLE CO.; CARLTON FORGE WORKS; CIBA GEIGY CORP.; CLEVELAND WRECKING CO.; COLUMBIA PICTURES; COOPER INDUSTRIES, INC.; COTY, INC.; CROWLEY INC.; DESOTO INC.; DON KNOTT FORD; DRESSER INDUSTRIES, INC.; DUREX INC.; ELECTROFILM INC.; EMHART INDUSTRIES, INC.; FASSON CORP.; FEDERAL-MOGUL CORP.; FEDERAL-MOGUL LLC; FEDERAL RESERVE BANK; FRICTION INC.; FRICTION MATERIALS CORP.; FMC CORPORATION; FORD AEROSPACE AND COMMUNICATIONS CORP.; FORD MOTOR COMPANY; FOSTER-FORBES GLASS CO.; GENERAL MILLS, INC.; GLASS CONTAINERS CORP.; GENSTAR BUILDING MATERIALS CO.; GENSTAR ROOFING PRODUCTS COMPANY, INC.; GKN AEROSPACE CHEM-TRONICS INC.; GLOBAL TUBE CORPORATION; GWB (US), INC.; HILL BROTHERS CHEMICAL CO.; HI-SHEAR CORP.; HOLLYTEX CARPET MILLS, INC.; HOUGHTON INTERNATIONAL INC.; JEFFRIES BANK NOTES CO.; JOHNSON CONTROLS INC.; JOSLYN MANUFACTURING & SUPPLY CO.; KAISER FOUNDATION HEALTH PLAN, INC.; LISI AEROSPACE |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

| | |
|---|---|
| 1 | NORTH AMERICA, INC.; LONG BEACH TERMINAL COMPANY; MAX FACTOR CO.; MERCURY AEROSPACE INC.; MERCURY AEROSPACE FASTENERS; MRC HOLDINGS, INC.; NORTH AMERICAN ENVIRONMENTAL; NORTHROP PACIFIC; OWENS-ILLINOIS, INC.; PARAMOUNT PICTURES CORP.; PILLSBURY CO.; PRICE PFISTER *NKA* PFISTER; REPUBLIC SERVICES, INC.; RIO TINTO ALCAN INC.; SANDIA METAL PROCESS, INC.; SANMINA-SCI CORP.; SEQUA CORPORATION; SHUWA INVESTMENTS CORP.; SIERRACIN; SIKA CORP.; SMITH & CO.; SPS TECHNOLOGIES, INC.; STANLEY BLACK & DECKER, INC.; STANLEY WORKS; STRUCTURAL COMPOSITE INDUSTRIES; SUMITOMO LIFE REALTY; SYNTHANE TAYLOR; TECHNICOLOR, INC.; THOMPSON INDUSTRIES; THORPE INSULATION CO.; TTM TECHNOLOGIES, INC.; VOUGHT AIRCRAFT INDUSTRIES INC.; and DOES 1-10, |
| | Defendants. |

Declaration of James Potter

I, James Potter, declare as follows:

    1.    I am a Deputy Attorney General at the Office of the California Attorney General, duly licensed to practice law before the Central District of California. I am assigned to represent the Department of Toxic Substances Control ("DTSC") in various enforcement and cost recovery actions regarding the former BKK Class I Facility in West Covina, California. Since approximately 2006, I have been DTSC's lead negotiator in negotiations with the BKK Working Group, whose members are the plaintiffs in this action. I have negotiated the consent decrees that specify the BKK Working Group's work requirements at the BKK Class I Facility and various agreements regarding joint cost recovery efforts. I make the following statements based on first-hand knowledge, except as explicitly stated otherwise. If called as a witness in this matter, I could and would competently testify under oath as to the facts set forth below.

    2.    I submit this declaration in support of plaintiffs' motion for a further continuance of their obligation to serve the complaints in this matter. As described below, and in the declaration being submitted by Mr. Richard Hume, Chief of the Legacy Landfill Office in DTSC's Site Mitigation and Restoration Program, active litigation in the BKK Working Group's pending contribution actions would likely interfere with the joint effort by DTSC and the BKK Working Group to reach settlements with *de minimis* potentially responsible parties ("PRPs"). To that extent, such active litigation would not be in the public interest. I submitted a similar declaration in March of 2019 in support of the plaintiffs' earlier motion to stay and extend time to serve the defendants.

    3.    DTSC and the BKK Working Group have entered three consent decrees to protect public health and safety from hazardous substance releases from the BKK Class I Facility. DTSC entered the consent decrees in accordance with provisions in the federal Comprehensive Environmental Response, Compensation,

and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and California's Carpenter-Presley-Tanner Hazardous Substances Account Act ("HSAA"), Health & Saf. Code § 25300 *et seq.* The First Consent Decree, as amended, required the BKK Working Group (through its individual members) to: perform environmental response actions at the BKK Class I Facility, including the Essential Activities as that term is defined in the Amended First Consent Decree; perform certain critical tasks; and reimburse DTSC for certain response costs. *California Department of Toxic Substances Control et al. v. American Honda Motor Co. et al.,* No. CV-05-7746 (C.D. Cal. Mar. 9, 2006).

4. The Second Consent Decree requires the BKK Working Group (through its individual members) to perform additional environmental response actions at the BKK Class I Facility, including Essential Activities, and to reimburse DTSC for certain response costs. *California Department of Toxic Substances Control et al. v. American Honda Motor Co. et al.*, No. CV-10-03378 (C.D. Cal. August 10, 2010). The Second Consent Decree also requires the BKK Working Group to conduct an Engineering Evaluation/Cost Analysis ("EE/CA") of the landfill systems at the BKK Class I Facility. The BKK Working Group is currently in the process of completing the EE/CA.

5. The Third Consent Decree requires the BKK Working Group (through its individual members) to perform environmental response actions at the BKK Class I Facility, including Essential Activities and groundwater monitoring, and to reimburse DTSC for certain response costs. *California Department of Toxic Substances Control et al. v. American Honda Motor Co. et al.,* No. 2:15-CV-00729 (C.D. Cal. July 24, 2015). The Third Consent Decree also requires the BKK Working Group to conduct a Remedial Investigation/ Feasibility Study ("RI/FS") of potential groundwater contamination resulting from the BKK Class I Facility. The BKK Working Group is currently conducting the RI/FS. Together, the EE/CA and

1  groundwater RI/FS will detail cleanup objectives and recommend a final remedy
2  for the BKK Class I Facility.
3    6. In 2017, DTSC and the BKK Working Group entered parallel
4  agreements with JP Morgan Chase, N.A. ("JP Morgan") and other parties affiliated
5  with the former owner of the BKK Class I Facility. Pursuant to the agreement
6  between DTSC, JP Morgan, and the Federal Deposit Insurance Corporation (as
7  receiver for Washington Mutual Bank), JP Morgan agreed to pay $85 million
8  toward future response costs at the BKK Class I Facility and $1 million toward
9  response costs already incurred by DTSC at the site. Consent Decree with
10 JPMorgan Chase, N.A., Federal Deposit Insurance Corporation, as Receiver for
11 Washington Mutual Bank and Related Entries, *California Department of Toxic*
12 *Substances Control, et. al. v. American Honda Motor Co., Inc., et. al.*, No. CV-05-
13 7746, ECF No. 97 (C.D. Cal. Jan. 25, 2017).
14   7. DTSC and the BKK Working Group negotiated a "Disbursement
15 Amendment" to the Third Consent Decree, that provided a portion of the JP
16 Morgan settlement proceeds was allocated to an escrow account to reimburse costs
17 incurred by the BKK Working Group in performing work required under the
18 consent decrees. The Court entered the Disbursement Amendment on January 25,
19 2017. *California Department of Toxic Substances Control et al. v. American Honda*
20 *Motor Co. et al.,* No. 2:15-CV-00729-DDP-AJW ECF No. 35 (C.D. Cal. Jan. 25,
21 2017).
22   8. DTSC and the BKK Working Group are working to develop a joint
23 initiative to recover response costs for the BKK Class I Facility from other PRPs,
24 including a drive to negotiate settlements with *de minimis* PRPs, which the parties
25 hope to begin very soon.
26   9. The joint initiative is intended to facilitate settlements with most, if not
27 all, PRPs for the BKK Class I Facility, other than those that comprise the BKK
28 Working Group. The initiative relies on the shared use of a sophisticated PRP

database created by the BKK Working Group. The initiative also provides for the establishment of an escrow account to hold settlement funds received for future implementation of the final remedy at the BKK Class I Facility.

10. DTSC and the BKK Working Group are working diligently to commence the *de minimis* settlement drive. Many of the *de minimis* PRPs with whom DTSC and the BKK Working Group hope to settle with are named as defendants in the BKK Working Group's pending contribution actions. The features of the anticipated drive are described in Paragraphs 10 and 11 of the Declaration of Richard Hume, submitted herewith.

11. Over the past year, DTSC and the BKK Working Group completed their negotiation of the documents needed to implement the joint cost recovery initiative and to begin the *de minimis* drive. In particular, the parties have agreed to the final form of a "Second Disbursement Amendment" to the Third Consent Decree, which will govern how settlement proceeds collected under the initiative are managed and ultimately used. Further, DTSC has obtained approval from its parent agency to ask the court presiding over the Third Consent Decree litigation to enter the Second Disbursement Amendment.

12. Although DTSC and the BKK Working Group have continued to work diligently, the process of executing the Second Disbursement Amendment and seeking judicial approval have been delayed by the COVID-19 pandemic.

13. Consistent with provisions in CERCLA, it is DTSC's practice to give public notice and solicit comments on consent decrees before seeking judicial approval. In this instance, because of the COVID-19 pandemic, DTSC will hold a 60-day public comment period rather than the usual 30-day period. DTSC anticipates that it will begin the public comment period in late May and lodge the consent decree at that time.

14. DTSC supports the plaintiffs' motion for a further continuance because the process of negotiating settlements with the *de minimis* PRPs will be greatly

complicated if the BKK Working Group is simultaneously engaged in active litigation against the *de minimis* PRPs.

      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

      Dated:   April 29, 2020

                                      /s/ James Potter
                                      James Potter