|   |   |
|---|---|
| 1 | **HINSON GRAVELLE & ADAIR LLP** |
| 2 | Douglas A. Gravelle (SBN 166110)<br>gravelle@hinsongravelle.com |
| 3 | K. Eric Adair (SBN 150650)<br>adair@hinsongravelle.com |
| 4 | 28470 Avenue Stanford, Suite 350<br>Valencia, CA 91355 |
| 5 | Telephone: 661-294-0116<br>FAX: 661-294-0134 |
| 6 | Attorneys for Plaintiffs |
| 7 | BKK WORKING GROUP, an unincorporated association, and individual members identified below |
| 8 |   |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BKK WORKING GROUP; ANADARKO E&P ONSHORE LLC; ATLANTIC RICHFIELD COMPANY; ASHLAND LLC.; BAYER CROPSCIENCE INC.; BHPI SERVICE LLC; THE BOEING COMPANY; CALIFORNIA RESOURCES CORPORATION; CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY; CHEVRON MARINE PRODUCTS LLC; CONOCOPHILLIPS COMPANY; CROSBY & OVERTON, INC.; THE DOW CHEMICAL COMPANY; DUCOMMUN AEROSTRUCTURES, INC.; ESSEX CHEMICAL CORPORATION; EXXON MOBIL CORPORATION; GEMINI INDUSTRIES, INC.; GENERAL DYNAMICS CORPORATION; GENERAL LATEX AND CHEMICAL CORPORATION; HP INC. (FORMERLY KNOWN AS HEWLETT-PACKARD COMPANY); AMERICAN | Case No. 2:18-cv-05836-MWF-PLA<br><br>**DECLARATION OF RICHARD HUME IN SUPPORT OF THIRD MOTION TO STAY AND EXTEND TIME TO SERVE DEFENDANTS** |

| | |
|---|---|
| 1 | HONDA MOTOR CO., INC.; HUNTINGTON BEACH COMPANY; LOCKHEED MARTIN CORPORATION; MARS, INC. (FORMERLY KNOWN AS KAL KAN FOODS INC.); MONTROSE CHEMICAL CORPORATION OF CALIFORNIA; MORTELL COMPANY; MORTON INTERNATIONAL, INC.; NATIONAL STEEL AND SHIPBUILDING COMPANY; NORTHROP GRUMMAN SYSTEMS CORPORATION; OXY USA, INC.; QUEMETCO, INC.; ROCKWELL AUTOMATION, INC.; ROHM & HAAS COMPANY; ROHR, INC.; SAN DIEGO GAS & ELECTRIC COMPANY; SMITH INTERNATIONAL, INC.; SOUTHERN CALIFORNIA EDISON COMPANY; SOUTHERN CALIFORNIA GAS COMPANY; STAUFFER MANAGEMENT COMPANY LLC; THE PROCTER & GAMBLE MANUFACTURING COMPANY; THUMS LONG BEACH COMPANY; UNION CARBIDE CORPORATION; UNION PACIFIC RAILROAD/SOUTHERN PACIFIC TRANSPORTATION COMPANY; UNITED STATES STEEL CORPORATION; UNITED TECHNOLOGIES CORPORATION; AND UNIVAR USA INC., |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | Plaintiffs, |
| 26 | vs. |
| 27 | ALBERTSONS COMPANIES, INC.; ALCO INDUSTRIES, INC.; |
| 28 | |

| | |
|---|---|
| 1 | ALLERGAN, INC.; AMERICAN CAN COMPANY; AMPEX CORP.; ANCO METAL IMPROVEMENT CO.; ARDAGH GROUP S.A.; ARGO PETROLEUM CORP.; AURUM INDUSTRIES, INC.; BARRY WRIGHT CONTROLS; BEAULIEU OF AMERICA, INC.; BIRTCHER PACIFIC; BROWNING FERRIS INDUSTRIES; BFI XV REALTY FUND LTD.; BYRON JACKSON PUMPS, INC.; CAROL CABLE CO.; CARLTON FORGE WORKS; CIBA GEIGY CORP.; CLEVELAND WRECKING CO.; COLUMBIA PICTURES; COOPER INDUSTRIES, INC.; COTY, INC.; CROWLEY INC.; DESOTO INC.; DON KNOTT FORD; DRESSER INDUSTRIES, INC.; DUREX INC.; ELECTROFILM INC.; EMHART INDUSTRIES, INC.; FASSON CORP.; FEDERAL-MOGUL CORP.; FEDERAL-MOGUL LLC; FEDERAL RESERVE BANK; FRICTION INC.; FRICTION MATERIALS CORP.; FMC CORPORATION; FORD AEROSPACE AND COMMUNICATIONS CORP.; FORD MOTOR COMPANY; FOSTER-FORBES GLASS CO.; GENERAL MILLS, INC.; GLASS CONTAINERS CORP.; GENSTAR BUILDING MATERIALS CO.; GENSTAR ROOFING PRODUCTS COMPANY, INC.; GKN AEROSPACE CHEM-TRONICS INC.; GLOBAL TUBE CORPORATION; GWB (US), INC.; HILL BROTHERS CHEMICAL CO.; HI-SHEAR CORP.; HOLLYTEX CARPET MILLS, INC.; HOUGHTON INTERNATIONAL INC.; JEFFRIES BANK NOTES CO.; JOHNSON CONTROLS INC.; JOSLYN MANUFACTURING & SUPPLY CO.; KAISER FOUNDATION HEALTH PLAN, INC.; LISI AEROSPACE |

| | |
|---|---|
| 1 | NORTH AMERICA, INC.; LONG BEACH TERMINAL COMPANY; |
| 2 | MAX FACTOR CO.; MERCURY AEROSPACE INC.; MERCURY |
| 3 | AEROSPACE FASTENERS; MRC HOLDINGS, INC.; NORTH |
| 4 | AMERICAN ENVIRONMENTAL; NORTHROP PACIFIC; OWENS- |
| 5 | ILLINOIS, INC.; PARAMOUNT PICTURES CORP.; PILLSBURY CO.; |
| 6 | PRICE PFISTER *NKA* PFISTER; REPUBLIC SERVICES, INC.; RIO |
| 7 | TINTO ALCAN INC.; SANDIA METAL PROCESS, INC.; SANMINA- |
| 8 | SCI CORP.; SEQUA CORPORATION; SHUWA |
| 9 | INVESTMENTS CORP.; SIERRACIN; SIKA CORP.; SMITH & |
| 10 | CO.; SPS TECHNOLOGIES, INC.; STANLEY BLACK & DECKER, |
| 11 | INC.; STANLEY WORKS; STRUCTURAL COMPOSITE |
| 12 | INDUSTRIES; SUMITOMO LIFE REALTY; SYNTHANE TAYLOR; |
| 13 | TECHNICOLOR, INC.; THOMPSON INDUSTRIES; THORPE |
| 14 | INSULATION CO.; TTM TECHNOLOGIES, INC.; VOUGHT |
| 15 | AIRCRAFT INDUSTRIES INC.; and DOES 1-10, |
| 16 | |
| 17 | Defendants. |

Declaration of Richard Hume

I, Richard Hume, declare as follows:

1. I am Chief of the Legacy Landfills Office in the Site Mitigation and Restoration Program at the California Department of Toxic Substances Control ("DTSC") and have been with DTSC for 31 years. I have over 31 years of experience working in the environmental investigation and cleanup of state and federal Superfund sites. Prior to serving in my current position, I worked as a supervisor and project manager for DTSC for 22 years, overseeing and directing complex soil and groundwater investigations and remedial actions, including federal and state Superfund and responsible party funded projects. I make the following statements based on first-hand knowledge, except as explicitly stated otherwise. If called as a witness in this matter, I could and would competently testify under oath as to the facts set forth below.

2. I submit this declaration in support of plaintiff's request for a further stay of litigation in this action, allowing plaintiffs an extension of time to serve the defendants in this matter.

3. Since October 2014, I have overseen DTSC's work at the former BKK Class I Facility in West Covina, California. I supervise and oversee scientists, engineers, engineering geologists, and others conducting the environmental investigation and cleanup activities at that site. In addition to a closed hazardous waste landfill, the BKK Class I Facility includes extensive infrastructure dedicated to collecting and treating landfill gas and liquids, including an on-site Leachate Treatment Plant ("LTP").

4. DTSC is authorized to compel and oversee the cleanup of sites contaminated with hazardous substances under two statutes: the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and California's Carpenter-Presley-Tanner Hazardous Substances Account Act ("HSAA"), Health & Saf. Code § 25300 *et seq.*

Under these laws, parties who sent hazardous substances for disposal at the BKK Class I Facility, as well as the owners and operators of the site, are jointly and severally liable for response costs incurred by DTSC at the site.

5. In October 2004, BKK Corporation ("BKK Corp.") notified DTSC that it was no longer financially able to perform the required post-closure care of the BKK Class I Facility, including maintaining the landfill gas and liquid collection systems and operating the LTP. As a result, DTSC commenced response actions at the BKK Class I Facility, including hiring a contractor to conduct the operation and maintenance of landfill systems that are essential to protecting public health, safety, and the environment. DTSC has incurred, and continues to incur, costs in planning, conducting, and overseeing response actions at the BKK Class I Facility.

6. In December 2004, DTSC issued an Imminent and Substantial Endangerment Determination and Order and Remedial Action Order, Docket No. I/SE-D-04/05-004 ("ISE Order") to BKK Corp. and approximately fifty (50) potentially responsible parties ("PRPs"). DTSC alleged the PRPs disposed of waste at the BKK Class I Facility. Some of the PRPs named as respondents in the ISE Order came together as the BKK Working Group, the plaintiffs in this action.

7. Under the CERCLA/HSAA framework, where a contaminated site is large and there are many PRPs, it is common for the lead regulatory agency to have a working relationship with a group of PRPs, like the BKK Working Group, that has agreed to conduct certain response actions at the site under the agency's oversight. Additionally, the lead regulatory agency and the working parties may cooperate in collecting response costs from other PRPs to help fund future response actions at the site and to reimburse the agency's costs. DTSC and the BKK Working Group have such a relationship.

8. As discussed in the declaration of James Potter submitted herewith, DTSC and the BKK Working Group entered three consent decrees in 2005, 2010,

and 2015 respectively. Each of the consent decrees requires the BKK Working Group to perform certain response actions at the BKK Class I Facility and to reimburse DTSC for certain response costs incurred at the site. The three consent decrees represent interim steps toward a final remedy at the BKK Class I Facility. In pursuit of this long-term solution, my staff and counsel for DTSC and the BKK Working Group and its counsel have worked together for many years to recover response costs from other PRPs to fund current and future response actions at the BKK Class I Facility.

9. For a number of years, DTSC and the BKK Working Group have been working diligently to implement their joint initiative to recover response costs from other PRPs, including, but not limited to, those parties named as defendants in the BKK Working Group's pending contribution actions. The initiative includes shared use of a PRP database created by the BKK Working Group and joint negotiations with the other PRPs. DTSC and the BWG have agreed that the net proceeds from the initiative will be held in escrow to reimburse the costs to be incurred by the BKK Working Group to for use in implementing the final remedy at the BKK Class I Facility including the reimbursement of costs incurred by the BKK Working Group towards that effort.

10. The first stage of the initiative includes an effort to recover response costs from over one thousand *de minimis* PRPs, many of whom are defendants in the BKK Working Group's pending contribution actions. The goal of the joint *de minimis* collection effort is to quickly enter as many cash-out settlements as possible. Pursuant to these settlements, each *de minimis* PRP will pay its equitable share of the total estimated response costs at the BKK Class I Facility based on its volumetric share of waste sent to the landfill.

11. My staff, working with attorneys from DTSC's Office of Legal Counsel and the Attorney General's Office, as well as representatives of the BKK Working Group, have completed most of the tasks needed to begin the initiative.

Declaration of Richard Hume

Over the past year, DTSC and the BKK Working Group's efforts to begin the initiative include developing a website dedicated to the joint initiative, model documents, informational guidance to PRPs on the *de minimis* settlement process, and protocols on: notifying each *de minimis* PRP of its liability and the opportunity to settle; resolving any disputes that may arise with the *de minimis* PRPs regarding the volume of waste sent to the BKK Class I Facility; evaluating a PRP's inability to pay application; and memorializing the settlements in a model Administrative Consent Order and Settlement Agreement.

12. DTSC's staff began teleworking on or around March 16, 2020, shortly before California Governor Newsom issued the first statewide stay-at-home order on March 19, 2020 in response to the COVID-19 pandemic. The transition to teleworking is delaying the joint initiative to collect response costs from *de minimis* PRPs. Nonetheless, DTSC and the BKK Working Group continue to work diligently toward sending out the first settlement offers, and hope to do so soon.

13. Based on conversations with my staff, DTSC counsel, and representatives of the BKK Working Group, I believe that active litigation in the BKK Working Group's pending contribution actions would interfere with and slow down the joint initiative to reach settlements with *de minimis* PRPs. Likewise, active litigation could potentially slow the pace of response actions at the BKK Class I Facility, which would be adverse to the public interest. Accordingly, DTSC respectfully supports the BKK Working Group's request for a further stay of this action.

I declare under penalty of penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: April 29, 2020

_____
Richard Hume