# EXHIBIT C

BILL LOCKYER, Attorney General of the State of California
TOM GREENE, Chief Assistant Attorney General
THEODORA BERGER Senior Assistant Attorney General
JAMES POTTER Cal Bar No. 166992
BRIAN HEMBACHER, Cal. Bar No. 90428
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 897-2638
Fax: (213) 897-2802

Attorneys for Plaintiffs

FILED
CLERK, U.S. DISTRICT COURT
MAR - 6 2006
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

X Priority
X Send
Clsd
X Enter
X JS-5/JS-6
JS-2/JS-3

LODGED
CLERK, U.S. DISTRICT COURT
FEB - 8 2006
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the CALIFORNIA TOXIC SUBSTANCES CONTROL ACCOUNT,

Plaintiffs,

v.

AMERICAN HONDA MOTOR CO., INC.; ANADARKO E&P COMPANY LP; ATLANTIC RICHFIELD COMPANY; BAYER CROPSCIENCE INC.; CHEMICAL WASTE MANAGEMENT, INC.; CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY; CITY OF LOS ANGELES, ACTING BY AND THROUGH THE LOS ANGELES DEPARTMENT OF WATER AND POWER; CONOCOPHILLIPS COMPANY; DUCOMMUN AEROSTRUCTURES, INC.; EXXON MOBIL CORPORATION; GENERAL MOTORS CORPORATION; HONEYWELL INTERNATIONAL INC.; HUNTINGTON BEACH COMPANY; MCFARLAND ENERGY, INC. NATIONAL STEEL AND SHIPBUILDING COMPANY; NORTHROP GRUMMAN CORPORATION; QUEMETCO, INC.;

No. CV05-7746 CAS(JWJx)

AMENDED CONSENT DECREE

ENTERED
CLERK, U.S. DISTRICT COURT
MAR - 9 2006
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

DOCKETED ON CM
MAR - 9 2006
BY 003



PAGE 2/64 * RCVD AT 3/9/2006 3:55:34 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:RightFAX * DURATION (mm-ss):20-38

ROHR, INC.; SHELL OIL COMPANY; SOUTHERN CALIFORNIA EDISON COMPANY; THUMS LONG BEACH COMPANY; UNION CARBIDE CORPORATION; UNION OIL COMPANY OF CALIFORNIA; WASHINGTON MUTUAL BANK; WASTE MANAGEMENT COLLECTION AND RECYCLING, INC.; WESTERN WASTE INDUSTRIES; and XEROX CORPORATION,

Defendants.

SCANNED

## AMENDED CONSENT DECREE

This Amended Consent Decree ("Consent Decree") is made and entered into by and among the Plaintiffs and the Settling Defendants, as defined in Paragraphs 3.16 and 3.17 herein (collectively, the "Parties"). This Consent Decree resolves the liability of the Settling Defendants for Past Response Costs, Future Interim Response Costs and Future DTSC Oversight Costs as defined herein incurred by the Plaintiff Department of Toxic Substances Control ("DTSC") at the Facility, as defined herein, and obligates the Settling Defendants to do certain work at the Subject Property as specified herein. This Consent Decree does not affect in any way the Plaintiffs' claims against any persons or entities other than those bound by the Consent Decree (as defined in Paragraph 10.20), nor does it resolve any claims against the parties bound unless expressly addressed in this Consent Decree.

## INTRODUCTION

Concurrent with the lodging of this Consent Decree, the Plaintiffs are filing a complaint against the Settling Defendants for recovery of Past Response Costs as defined herein and the performance of certain injunctive relief pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9607, as amended ("CERCLA"), and California Health and Safety Code section 25358.3(e) in connection with alleged releases of

hazardous substances into the environment at and from a closed hazardous waste landfill in West Covina, California, as described herein ("Complaint").

Subject to the covenants, conditions and reservations of rights in this Consent Decree, this Consent Decree resolves the claims asserted in the Complaint.

The Plaintiffs and Settling Defendants agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and that settlement of this matter and entry of this Consent Decree is intended to avoid prolonged and complicated litigation between the Parties, is the most appropriate means to resolve the matters covered herein, and is fair, reasonable and in the public interest.

**NOW, THEREFORE,** with the consent of the Parties to this Consent Decree, it is hereby **ORDERED, ADJUDGED AND DECREED**:

## I. JURISDICTION

1.1 This Consent Decree is entered into by the Parties pursuant to the Plaintiffs' authority under Section 107 of CERCLA, 42 U.S.C. § 9607, and California Health and Safety Code Section 25358.3(e). The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and CERCLA, 42 U.S.C. § 9601 *et seq*., and supplemental jurisdiction over claims arising under the laws of the State of California pursuant to 28 U.S.C. § 1367(a). Solely for purposes of this Consent Decree, the Settling Defendants waive all objections and defenses they may have to the jurisdiction of the Court or to venue in this district or to the Plaintiffs' rights to enforce this Consent Decree.

## II. BACKGROUND

2.1 This Consent Decree relates to a 583-acre landfill facility located at 2210 South Azusa Avenue, West Covina, Los Angeles County, California 91792 ("Facility"). The Facility contains a closed Class I hazardous waste landfill, an inactive Class III municipal landfill and related facilities. A map and a legal

description of the 583-acre Facility are attached as Exhibits A-1 and A-2, respectively. Non-party BKK Corporation (BKK) owns the portion of the Facility that is commonly described as Parcel 3, which includes the Class I and Class III landfills. Non-party City of West Covina owns the balance of the 583-acre property, which is commonly described as Parcels 1 and 2.

2.2 Regulatory Status. On Parcel 3, BKK is the owner and operator of the following: (a) the closed "Class I Landfill"; (b) the inactive Class III municipal landfill that is in the process of closing; (c) an operating leachate treatment plant (LTP); and (d) the inactive "Area D" disposal area. Post-closure operation, maintenance and monitoring of the Class I Landfill, and operation of the LTP, are primarily regulated by DTSC pursuant to the Health and Safety Code and the California Code of Regulations, title 22.

2.3 On October 18 and 20, 2004, BKK notified DTSC that for financial reasons BKK would no longer be able to perform required post-closure care of the Class I Landfill, or operate the LTP, after November 17, 2004. As a result, DTSC hired a contractor to conduct emergency response activities at the Facility beginning on November 18, 2004. These activities were and continue to be necessary to ensure continuous maintenance and operation of systems that are essential to protect public health, safety and the environment.

2.4 On December 2, 2004, DTSC issued an Imminent and Substantial Endangerment Determination and Order and Remedial Action Order Docket No. I/SE-D-04/05-004 ("ISE Order"), to BKK and 50 other respondents who are alleged to have disposed of waste at the Class I Landfill or to be prior owners or operators of the Facility (as defined in Paragraph 3.7 herein) that includes the Class I Landfill. The ISE Order required the respondents to that Order to perform certain response actions and to reimburse DTSC for certain response costs. All of the Settling Defendants, except ConocoPhillips Company, Northrop Grumman Corporation, Waste Management Collection and Recycling, Inc, Huntington Beach

Company, McFarland Energy, Inc., and Union Carbide Corporation are named as respondents in the ISE Order.

2.5 Interim Settlement Agreements. On March 14, 2005, April 15, 2005, May 16, 2005, June 15, 2005, July 12, 2005 and August 15, 2005, DTSC and Settling Defendants entered into six interim settlement agreements, whereby Settling Defendants paid to DTSC $3 million to partially reimburse DTSC for the Past Response Costs that it has incurred with respect to the Facility. In consideration for these interim payments, and the promises by Settling Defendants contained in this Consent Decree, DTSC agreed to this Consent Decree and has deemed the Settling Defendants to be in compliance with the ISE Order as set forth herein. The Interim Settlement Agreements are incorporated herein by reference.

2.6 The Past Response Costs, Future Interim Response Costs and Future DTSC Oversight Costs incurred by DTSC relating to the performance and oversight of work relating to the Facility and paid to DTSC by the Settling Defendants pursuant to this Consent Decree constitute necessary costs of response as that term is defined in 42 U.S.C. § 9601(25). These costs were incurred by DTSC in a manner not inconsistent with the National Contingency Plan.

2.7 Consent Decree. This Consent Decree provides for the performance of certain operation, maintenance and monitoring activities at the Subject Property until March 15, 2008, or two years from the date the Settling Defendants fully commence the Essential Activities and Critical Tasks and other work pursuant to Section IV herein, whichever is later, for the reimbursement of certain DTSC response costs with respect to the Facility, and the dismissal, without prejudice, of the ISE Order against the Settling Defendants. This Consent Decree also provides covenants not to sue and contribution protection, standstill agreements and a tolling agreement with respect to enforcement activity and litigation among the Parties concerning the Facility, to enable the Parties to work collaboratively to identify additional entities to participate in the performance and/or funding of

activities at the Subject Property and to work towards a long-term program to address conditions at the Subject Property.

2.8 No Admissions. By entering into this Consent Decree or by taking any action in accordance with its provisions, each Settling Defendant does not admit any allegations, findings, determinations or conclusions contained in the ISE Order, the Complaint or this Consent Decree, including without limitation that it sent, transported or arranged for disposal of any hazardous substances to or at the Class I Landfill, or that it owned or operated the Facility that includes the Class I Landfill, and does not admit any liability with respect to the Facility. Nothing in this Consent Decree shall be construed as an admission by any Settling Defendant of any issue of law or fact. Except as specifically provided for herein, nothing in this Consent Decree shall prejudice, waive, or impair any right, remedy, or defense that each Settling Defendant may have against any entity. Each Settling Defendant agrees to comply with and be bound by the terms of this Consent Decree and further agrees that it will not contest the basis or validity of this Consent Decree in any action to enforce it.

## III. DEFINITIONS

3.1 Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them therein. Whenever terms listed below are used in this Consent Decree or in any attachments or exhibits hereto, the following definitions shall apply:

3.2 "Class I Landfill" means the closed hazardous waste landfill located at 2210 South Azusa Avenue, West Covina, Los Angeles County, California 91792 that is shown on the map that is attached as Exhibit A-1. Together, the Class I Landfill and the Leachate Treatment Plant are also referred to in this Consent Decree as part of the "Subject Property."

3.3 "Class III Landfill" shall mean that municipal landfill also located at 2210 South Azusa Avenue, West Covina, Los Angeles County, California 91792, which is shown on the map in Exhibit A-1.

3.4 "Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

3.5 "Effective Date" shall mean the date that this Consent Decree is entered by the Court.

3.6 "Excluded Work" shall mean (a) an assessment of the storm drain system and repair/replacement of storm drain components as described in Paragraph 5.1.3 of the ISE Order; and (b) improvement of the upper drainage basin as described in Item 2 of Exhibit C of the same ISE Order.

3.7 "Facility" shall mean the 583-acre landfill facility located at 2210 South Azusa Avenue, West Covina, California and described in Exhibits A-1 and A-2. The Facility contains a closed Class I hazardous waste landfill, an inactive Class III municipal landfill that is in the process of closing, the Leachate Treatment Plant as defined herein and related facilities. For purposes of Paragraphs 2.8, 3.15, 4.7, 7.5, and 8.5, Facility shall also include contiguous areas to the Facility where hazardous substances emanating from the Landfills have come to be located.

3.8 "Future DTSC Oversight Costs" shall mean all direct and indirect costs of overseeing this Consent Decree, including but not limited to payroll costs, travel costs, and laboratory costs, incurred by DTSC in reviewing, revising, modifying, commenting on or approving plans, reports and other items pursuant to this Consent Decree, and verifying the Work to Be Performed after a) the Effective Date of this Consent Decree or b) the date upon which the Settling Defendants

fully commence the Essential Activities and Critical Task and other work pursuant to Section IV herein, whichever is earlier.

3.9 "Future Interim Response Costs" shall mean all costs incurred by DTSC in response to conditions at the Facility from the date of lodging of this Consent Decree through March 15, 2006 or the date that the Settling Defendants fully commence the Essential Activities and Critical Tasks and other work pursuant to Section IV herein, whichever is later.

3.10 "Hazardous Substances" shall have the meaning set forth in CERCLA Section 101(14), 42 U.S.C. § 9601(14).

3.11 "Interim Settlement Agreements" shall mean the six interim agreements entered into by DTSC and Settling Defendants on March 14, 2005, April 15, 2005, May 16, 2005, June 15, 2005, July 12, 2005, and August 15, 2005, referred to in Paragraph 2.5.

3.12 "Leachate Treatment Plant" (or "LTP") means the leachate treatment plant that is located on the Class I Landfill. Together, the Class I Landfill and the LTP are also referred to in this Consent Decree as part of the "Subject Property".

3.13 "National Contingency Plan" or "NCP" shall refer to the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300.

3.14 "Parties" shall mean Plaintiffs and the Settling Defendants.

3.15 "Past Response Costs" shall mean all costs incurred by DTSC in response to conditions at the Facility through the date of lodging of the Consent Decree, including costs for which DTSC has been reimbursed pursuant to the Interim Settlement Agreements and this Consent Decree.

3.16 "Plaintiffs" or "DTSC" shall mean the California Department of Toxic Substances Control and the following state accounts, to the extent that funds from those accounts have been, or will be expended on behalf of DTSC at the Facility:

(a) The California Hazardous Substance Account;

(b) The California Hazardous Waste Control Account;

(c) The California Toxic Substances Control Account; and

(d) The California Site Remediation Account.

SCANNED

3.17 "Settling Defendants" shall mean the parties identified as Defendants in the caption above. For purposes of Paragraph 2.8, Section VII, and Section VIII, "Settling Defendants" also shall mean Defendants' corporate predecessors-in-interest, successors-in-interest and affiliated companies identified in Exhibit G.

3.18 "Subject Property" shall mean the Class I Landfill, the LTP, service roads and related pollution control equipment located at 2210 South Azusa Avenue, West Covina, Los Angeles County, California 91792.

3.19 "Tolling Termination Date" shall mean the date upon which the Tolling Agreement provided for in Paragraph 7.11 terminates. The Tolling Termination Date shall be the earlier of: (a) four (4) years from the Effective Date; or (b) sixty (60) days after a complaint is served on the Settling Defendants requiring the performance of work, reimbursement of cleanup costs, or contribution towards costs associated with cleanup of the Facility.

## IV. SETTLING DEFENDANTS' WORK TO BE PERFORMED AND OTHER OBLIGATIONS

4.1 Work to Be Performed. Settling Defendants shall undertake the following response actions (Work to Be Performed) set forth below.

4.1.1 Essential Activities. No later than thirty (30) days after the date of lodging of this Consent Decree, Settling Defendants shall submit to DTSC a Quality Assurance Project Plan and Health and Safety Plan developed in accordance with Exhibit E concerning performance of the operation, maintenance and monitoring activities at the Subject Property referred to as Essential Activities and described in Exhibit C. No later than thirty (30) days after lodging of this Consent Decree, Settling Defendants shall commence preparations for undertaking

the Essential Activities (Exhibit C) on a day-to-day basis. On or before fourteen (14) days after the Effective Date of this Consent Decree, Settling Defendants shall commence the Essential Activities described in Exhibit C. Settling Defendants shall perform this work until March 15, 2008, or two years from the date the Settling Defendants fully commence the Essential Activities and Critical Tasks and other work pursuant to Section IV herein, whichever is later.

4.1.2 Critical Tasks. Within five (5) days of the date of the lodging of this Consent Decree, Settling Defendants shall submit to DTSC a workplan and implementation schedule that outlines how and when Settling Defendants will perform and complete the primary activities within the tasks identified in Exhibit D (the Critical Tasks Workplan). Settling Defendants will perform and complete the primary activities within the tasks identified in Exhibit D (the Critical Tasks) in accordance with the schedule in the DTSC-approved workplan and shall commence conducting the primary activities on or before 14 days after the Effective Date of this Consent Decree, provided that DTSC approves the workplan on or before the Effective Date. The Critical Tasks Workplan shall include detailed descriptions of the task to be performed, the information or data needed for the task, and the deliverables that will be submitted to DTSC. A Quality Assurance Project Plan and Health and Safety Plan developed in accordance with Exhibit E of this Consent Decree shall be included with the Critical Tasks Workplan. The Critical Tasks Workplan shall identify each activity within the Critical Tasks to be performed in order of priority.

4.1.3 Work Consistent with Requirements. Subject to Paragraph 4.6 herein, all Work to Be Performed pursuant to this Consent Decree shall be consistent with the requirements of all DTSC-approved workplans, Chapter 6.8 (commencing with Section 25300), Division 20 of the Health and Safety Code, and any other applicable state or federal statutes and regulations, including without

limitation, the NCP, and applicable DTSC and U.S. Environmental Protection Agency (U.S. EPA) guidance documents.

4.1.4 To the extent that there is a conflict between the language in any Exhibit and the terms of this Consent Decree, the terms of this Consent Decree shall control.

4.1.5 Upon approval by DTSC of the work performed by Settling Defendants under this Consent Decree and if all payments required to be made pursuant to this Consent Decree have been paid, said work will be deemed consistent, and in accordance with the NCP.

4.1.6 Public Participation Activities (Community Relations). Settling Defendants shall cooperate with and support DTSC in its efforts to provide meaningful public participation in response actions pursuant to Health and Safety Code Sections 25356.1 and 25358.7, DTSC's most current Public Participation and Policy Guidance Manual and the Public Participation Plan. These activities shall include, but are not limited to, assisting in the development and distribution of fact sheets; public meetings; and the development and publishing of public notices.

4.2 California Environmental Quality Act (CEQA). Upon DTSC request, Settling Defendants shall submit any non-privileged information deemed necessary by DTSC to facilitate DTSC's compliance with the California Environmental Quality Act (CEQA).

4.3 Stop Work Order. In the event that DTSC determines that any activity (whether or not pursued in compliance with this Consent Decree) conducted by Settling Defendants may pose an imminent or substantial endangerment to the health or safety of people or to the environment, DTSC may order Settling Defendants to stop further implementation of this Consent Decree for such period of time needed to abate the endangerment. In addition, in the event that DTSC determines that any of Settling Defendants' activities (whether or not pursued in compliance with this Consent Decree) is proceeding without DTSC

authorization, DTSC may order Settling Defendants to stop further implementation of such activity for such period of time needed to obtain DTSC authorization, if such authorization is appropriate. Any deadline in this Consent Decree directly affected by a Stop Work Order, issued pursuant to this Paragraph, shall be extended for the term of the Stop Work Order.

4.4 Emergency Response Action/Notification. In the event of any occurrence, event, or condition that arises at the Subject Property after a) the Effective Date of this Consent Decree or b) the date upon which the Settling Defendants fully commence the Essential Activities and Critical Task and other work pursuant to Section IV herein, whichever is earlier, that constitutes a material change, that represents an emergency (including, but not limited to, fire, earthquake, explosion, landslide, or imminent or immediate human exposure to a hazardous substance caused by the release or threatened release of a hazardous substance) and that presents a risk to public health, and safety or the environment, Settling Defendants shall immediately take all appropriate actions to respond to that emergency. The Settling Defendants shall also immediately notify the DTSC Project Coordinator of the occurrence, event, or condition and of the steps the Settling Defendants have taken and propose to take in response thereto. Any action taken by the Settling Defendants shall be performed in consultation with the DTSC Project Coordinator and in accordance with all applicable provisions of this Consent Decree. Within seven (7) days of the onset of such an occurrence, event, or condition, Settling Defendants shall furnish a report to DTSC, signed by Settling Defendants' Project Coordinator, setting forth the occurrence, event, or condition that occurred and the measures taken in the response thereto. In the event that Settling Defendants fail to take appropriate response and DTSC takes the action instead, Settling Defendants shall be subject to liability to DTSC for all costs of the response action. Nothing in this Paragraph shall be deemed to limit any other notification requirement to which Settling Defendants may be subject, nor any

defenses that the Settling Defendants may have with respect to any action brought by DTSC to recover the costs of the response action taken by it pursuant to this Paragraph. Nothing in this Paragraph shall require the Settling Defendants to perform or complete the performance of Excluded Work.

4.5 Settling Defendants' Insurance. At least seven (7) days prior to commencement of any work under this Consent Decree, Settling Defendants shall provide copies of insurance policies or other evidence satisfactory to DTSC that demonstrates that any contractor or subcontractor hired by the Settling Defendants to implement the Work to be Performed pursuant to this Consent Decree maintains in force for the duration of this Consent Decree insurance equivalent to the following:

(a) commercial general liability (CGL) insurance with a combined single limit of at least $1 million per occurrence;

(b) automotive liability insurance with combined single limits of at least $2 million per accident;

(c) workers' compensation and employers' liability coverage of at least $1 million for employees engaged in the implementation of this Consent Decree;

(d) pollution liability insurance with a combined single limit of at least $1 million per occurrence; and

(e) excess/umbrella liability coverage in the aggregate amount of $10 million.

4.6 Owner/Operator Status. The Plaintiffs agree, and by entering this Consent Decree the Court finds, that the Settling Defendants shall not be considered owners or operators of the Facility, or arrangers for disposal or treatment of waste at the Facility solely as a result of their performance of the Work to Be Performed under this Consent Decree. BKK is the current owner and operator of the Subject Property and operator of the Facility. Nothing in this

Consent Decree shall relieve BKK of its statutory and regulatory obligations as the owner/operator of the Subject Property and operator of the Facility, or require Settling Defendants to assume those obligations, including compliance with all applicable laws and permits with respect to the landfills, signing manifests for waste generated at the LTP, public notices under California Health and Safety Code Sections 25249.5-25249.13 and other reporting obligations that are the responsibility of BKK as the owner and operator of the Subject Property, and operator of the Facility.

4.7 Future Interim Response Costs. The Settling Defendants shall pay DTSC $500,000 per calendar month (prorated as appropriate) in partial reimbursement to DTSC for response costs incurred by DTSC with respect to the Facility after the lodging of and prior to the Effective Date of this Consent Decree. The first of these payments shall be made within thirty (30) days of the lodging of this Consent Decree and each subsequent payment shall be made on the 15th of each month. However, Settling Defendants' obligation to make these payments shall terminate on December 15, 2005.

4.8 Payment of Future DTSC Oversight Costs. The Settling Defendants shall reimburse DTSC for Future DTSC Oversight Costs incurred after a) the Effective Date of this Consent Decree or b) the date upon which the Settling Defendants fully commence the Essential Activities and Critical Task and other work pursuant to Section IV herein, whichever is earlier, to oversee the activities of Settling Defendants and their agents under this Consent Decree, in the sum of $50,000 per month until March 15, 2008 or two years from the date the Settling Defendants fully commence the Essential Activities and Critical Tasks and other work pursuant to Section IV herein, whichever is later. Such payments shall begin 30 days after a) the Effective Date of this Consent Decree or b) the date upon which the Settling Defendants fully commence the Essential Activities and Critical Task and other work pursuant to Section IV herein, whichever is earlier, and each

subsequent payment shall be made on the 15th of each month thereafter. In the event that the payments required by this Paragraph are not made on a timely or complete basis, Settling Defendants shall pay interest on the unpaid balance, calculated at the rate of return earned on investment in the Surplus Money Investment Fund pursuant to section 16475 of the Government Code. The interest shall accrue from the date the payment was due, through the date of Settling Defendants' payment. Payments of interest under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendants' failure to make timely payments under this Section. Settling Defendants shall make all payments required by this Consent Decree in the manner described in Paragraph 10.15.

4.8.1 Documentation of Future DTSC Oversight Costs. After a) the Effective Date of this Consent Decree or b) the date upon which the Settling Defendants fully commence the Essential Activities and Critical Task and other work pursuant to Section IV herein, whichever is earlier, DTSC shall provide Settling Defendants with a Summary by Activity Report on a quarterly basis, documenting the Future DTSC Oversight Costs that have been incurred by DTSC. In the event that DTSC incurs less than $50,000 per month in Future DTSC Oversight Costs during the previous quarter, Settling Defendants shall receive a credit for any overpayment against future payments to be made pursuant to Paragraph 4.8.

4.9 Reimbursement of Past Response Costs. As described in Paragraph 2.5, the Settling Defendants have reimbursed DTSC for certain of its Past Response Costs incurred through the lodging of this Consent Decree in the amount of three million dollars ($3,000,000.00). The Settling Defendants shall pay DTSC an additional $ 750,000 in reimbursement of certain of DTSC's Past Response Costs within three (3) working days of the lodging of this Consent Decree.

V. AGREEMENTS BY DTSC

5.1 Postclosure Insurance Reimbursement.

SCANNED

5.1.1 For purposes of California Code of Regulations, title 22, sections 66264.145 and 66265.145, DTSC authorizes Settling Defendants to perform certain postclosure care of the Class I Landfill by conducting the Work to Be Performed that is related to postclosure care of the Class I Landfill under this Consent Decree until March 15, 2008 or two years from the date the Settling Defendants fully commence the Essential Activities and Critical Tasks and other work pursuant to Section IV herein, whichever is later. As persons authorized to perform postclosure care of the Class I Landfill, Settling Defendants shall be entitled to submit a claim for reimbursement of costs incurred in performing the work pursuant to this Consent Decree from Steadfast Insurance Company Policy No. PLC 7969053-04 for postclosure care expenditures by submitting itemized bills to DTSC pursuant to California Code of Regulations, title 22, sections 66264.145 (e) and 66265.145 (d) as applicable and Exhibit F of this Consent Decree. Settling Defendants shall submit the reimbursement request at the close of each annual coverage cycle (May 31) and shall submit only one reimbursement request for each reimbursement cycle during the period covered by this Consent Decree. Provided that Settling Defendants perform the work specified in this Consent Decree, they shall be entitled to the entire insurance proceeds for each reimbursement cycle (approximately $1,340,000) minus up to $120,000, on a first priority basis, for the 2005 (June 1, 2005 through May 31, 2006) and the 2006 (June 1, 2006 through May 31, 2007) cycles. For work performed by the Settling Defendants after May 31, 2007, Settling Defendants shall be entitled on a first priority basis to a monthly pro-rata share of an amount equal to the entire insurance proceeds for the 2007-2008 reimbursement cycle minus up to $120,000 based on the duration of work performed by the Settling Defendants pursuant to this Consent Decree. Settling Defendants shall be entitled to those costs that qualify

for reimbursement under California Code of Regulations, title 22, sections 66264.145 or 66265.145 as applicable. After Settling Defendants submit their request, DTSC agrees to review each reimbursement request within sixty (60) days of submission and, pursuant to the California Code of Regulations, title 22, sections 66264.145 (e) or 66265.145 (d) as applicable, approve the reimbursement request if it meets the requirements of the regulations and the costs are eligible postclosure expenditures. Exhibit F provides the protocol for submittal of said requests for reimbursement.

5.1.2 If all or part of the remaining $120,000 of the insurance proceeds (per reimbursement cycle) is not approved for reimbursement to BKK by DTSC, such proceeds shall be made available to reimburse the Settling Defendants pursuant to the terms of Paragraph 5.1.1.

5.1.3 DTSC shall not be liable for any denial of reimbursement by Steadfast Insurance Company or its successor or by a court. DTSC agrees to provide non-privileged information in its possession to the Settling Defendants necessary for securing reimbursement from Steadfast as authorized pursuant to Paragraph 5.1.

5.2 Site Coordination. DTSC agrees to work with Settling Defendants and other relevant entities to achieve a coordinated approach for all of the activities to be conducted at the Facility during the term of this Consent Decree.

5.3 Termination of ISE Order. Within 7 (seven) days of entry of this Consent Decree, DTSC will dismiss without prejudice the ISE Order, as against the Settling Defendants. DTSC reserves the right to issue any other administrative order against Settling Defendants with respect to the Facility, after the termination of this Consent Decree.

VI. DUE CARE/COOPERATION

6.1 Subject to Paragraph 4.6 above, the Settling Defendants shall exercise due care in performing work under this Consent Decree, and shall perform the

work required by this Consent Decree in compliance with all applicable local, state, and federal laws and regulations. Nothing in this Paragraph shall be deemed to (a) relieve BKK of the obligation to comply with any local, state, and federal laws and regulations applicable to it or permits issued to it with respect to the Subject Property or the Class III Landfill, or (b) require Settling Defendants to perform the obligations of BKK as owner and operator of the Facility to comply with any such laws, regulations or permits.

VII. COVENANTS NOT TO SUE AND RESERVATIONS OF RIGHTS

7.1 DTSC's Covenant Not to Sue. In consideration of the actions that will be performed and the payments that have been and will be made by Settling Defendants under the terms of this Consent Decree and subject to Paragraph 7.6 (DTSC's Reservation of Rights) of this Consent Decree, DTSC covenants not to sue or take administrative action against Settling Defendants: 1) for the obligations set forth in the ISE Order from December 9, 2004 through the date the ISE Order is dismissed with respect to the Settling Defendants; 2) for the obligation to conduct the Work to Be Performed pursuant to this Consent Decree and described in Exhibits C and D; 3) for Excluded Work as described herein; 4) for recovery of Future DTSC Oversight Costs incurred by DTSC as described herein; 5) for DTSC Past Response Costs as described herein; and 6) for Future Interim Response Costs as described herein.

7.2 Nothing in this Consent Decree shall preclude DTSC from seeking the recovery of any response cost not recovered under this Consent Decree from any entity not a party to this Consent Decree, including but not limited to, Past Response Costs and Future DTSC Oversight Costs not paid by Settling Defendants.

7.3 Nothing in this Consent Decree shall preclude DTSC from seeking recovery of any response costs from the Settling Defendants incurred after the

termination of this Consent Decree and not otherwise included in the Covenant Not to Sue in Paragraph 7.1 above.

7.4 The Covenant Not to Sue set forth in Paragraph 7.1 above shall take effect upon the Effective Date of this Consent Decree. This covenant not to sue is conditioned upon the complete and satisfactory performance by Settling Defendants of all obligations under this Consent Decree, including, but not limited to, performance of the Work to Be Performed pursuant to Paragraph 4.1, and full payment of certain Past Response Costs, Future DTSC Oversight Costs, and Future Interim Response Costs pursuant to Paragraphs 4.7, 4.8 and 4.9. This covenant not to sue extends only to Settling Defendants and does not extend to any other person or entity.

7.5 DTSC's Standstill. DTSC agrees not to take any additional administrative or judicial actions against the Settling Defendants with respect to the Facility until the earlier of: (a) termination of this Consent Decree; or (b) the date a complaint is served on DTSC requiring the performance of work, reimbursement of cleanup costs, or contribution towards costs associated with cleanup of the Subject Property. This Paragraph does not limit DTSC's reserved rights under Paragraph 7.6(a) below.

7.6 DTSC's Reservation of Rights. The Covenant Not to Sue set forth in Paragraph 7.1 above does not pertain to any matters other than those expressly specified therein. DTSC reserves and this Consent Decree is without prejudice to all rights against Settling Defendants with respect to all other matters, including but not limited to, the following:

(a) claims based on a failure by Settling Defendants and their successors or assignees to meet a requirement of or to otherwise enforce this Consent Decree;

(b) criminal liability;

(c) liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessment incurred by agencies;

(d) except as may otherwise be provided for herein, liability for violations of local, state or federal law or regulations;

(e) except as may otherwise be provided for herein, liability for performance of response actions and/or work, other than the Work to Be Performed pursuant to Paragraph 4.1, the work identified in Exhibits C and D, and the Excluded Work;

(f) liability for DTSC response costs, other than Future DTSC Oversight Costs, Interim Future Response Costs, and Past Response Costs;

(g) except as may otherwise be provided for herein, any liability arising from past, present or future ownership, operation, disposal, release, or threat of release of hazardous substances, pollutants or contaminants, at other sites besides the Facility;

(h) except as may otherwise be provided for herein, liability based upon the Settling Defendants' ownership or operation of the Facility, or upon the Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of any hazardous substances, pollutants or contaminants at or in connection with the Facility.

7.7 Except as provided in this Consent Decree, nothing herein shall limit the power and authority of DTSC or any other State agency to take, direct, or order all actions necessary to protect public health, welfare, or the environment or to prevent, abate, or minimize an actual or threatened release of hazardous substances, pollutants or contaminants, or hazardous or solid waste on, at, or from the Facility. Further, except as specifically provided for in this Consent Decree, nothing herein shall prevent DTSC from seeking legal or equitable relief to enforce the terms of this Consent Decree, from taking other legal or equitable actions as it

deems appropriate and necessary, or from requiring Settling Defendants to perform additional activities after the termination of this Consent Decree pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), the Health and Safety Code, the California Code of Regulations, title 22, or any other applicable law.

7.8 Settling Defendants' Covenant Not To Sue. In consideration of DTSC's Covenant Not To Sue in Paragraph 7.1 of this Consent Decree, the Settling Defendants hereby covenant not to sue and not to assert any claims or causes of action against DTSC, its authorized officers or employees, with respect to any regulatory action undertaken by DTSC with respect to the Subject Property from January 1, 2004 through the Effective Date of this Consent Decree.

7.9 Settling Defendants' Reservation of Rights. The Covenant Not To Sue set forth in Paragraph 7.8 and the Standstill Agreement set forth in Paragraph 7.10 do not pertain to any matters other than those specifically addressed therein and apply only to DTSC and do not extend to any other department, agency, board or body of the State of California. The Settling Defendants reserve, and this Consent Decree is without prejudice to, all rights against DTSC with respect to all other matters.

7.10 Settling Defendants' Standstill. The Settling Defendants agree not to assert any judicial claim against DTSC with respect to the Facility until the earlier of: (a) four (4) years from the Effective Date of this Consent Decree; or (b) the date a complaint is served on Settling Defendants requiring the performance of work, reimbursement of cleanup costs, or contribution towards costs associated with cleanup of the Facility.

7.11 Tolling Agreement. DTSC and Settling Defendants agree that all statutes of limitations applicable as of the Effective Date to any rights, claims, causes of action, counterclaims, crossclaims and defenses with respect to the Facility that Settling Defendants could assert against DTSC as of the Effective

Date shall be tolled for the period between the Effective Date and the Tolling Termination Date, and this tolling period shall be excluded from all computations of any applicable period of limitations. Such potentially applicable statutes of limitations that are tolled by this agreement include, without limitation, any applicable time limits within which an action may be commenced against DTSC under the provisions of the California Tort Claims Act, including, without limitation, Section 945.6 of the California Government Code.

VIII. EFFECT OF SETTLEMENT/ CONTRIBUTION PROTECTION

8.1 With regard to claims for contribution against Settling Defendants, the Parties hereto agree, and by entering this Consent Decree the Court finds, upon entry of this Consent Decree, that the Settling Defendants are entitled to protection from contribution actions or claims as provided by CERCLA Section 113(f) (2), 42 U.S.C. § 9613(f) (2) for matters addressed in this Consent Decree. The matters addressed in this Consent Decree are: (a) the Work to Be Performed by Settling Defendants described herein, to the extent that such work is actually performed by or on behalf of Settling Defendants and approved by DTSC; (b) Past Response Costs; (c) Future Interim Response Costs; (d) Future DTSC Oversight Costs; (e) interest on amounts referred to in (b), (c) and (d) above; and (f) compliance with the ISE Order from its effective date through the date on which it is dismissed as provided in this Consent Decree.

8.2 Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree with respect to the Facility. Each of the Parties to this Consent Decree expressly reserves, and this Consent Decree is without prejudice to, all rights (including, but not limited to, any right to contribution, indemnification and/or reimbursement), defenses, claims, remedies, demands, and causes of action that each party may have with respect to any matter, transaction, or occurrence relating in any way to the Facility against any person not a party hereto.

8.3 The Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify DTSC in writing at least sixty (60) days prior to the initiation of any such suit or claim.

8.4 The Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree, they will notify in writing DTSC within fifteen (15) days of service of the complaint on them. In addition, Settling Defendants shall notify DTSC within ten (10) days of service or receipt of any Motion for Summary Judgment and within ten (10) days of receipt of any order from a court setting a case for trial.

8.5 In any subsequent administrative or judicial proceeding initiated by one or more of the Plaintiffs for injunctive relief, recovery of response costs, or other appropriate relief relating to the Facility, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by DTSC in the subsequent proceeding were or should have been brought in the instant case.

IX. <u>FUTURE COOPERATION</u>

9.1 The Parties recognize that the Settling Defendants represent a subset of those who may be responsible for response actions at the Subject Property. The Parties also recognize that this Consent Decree represents an interim step towards a more permanent solution to the long term operation and maintenance of the Subject Property that may include a component for additional responsible parties. The Parties agree to work in good faith towards this long term solution.

9.2 <u>Additional Potentially Responsible Parties (PRPs)</u>.

(a) DTSC issued notices of noncompliance to respondents to the ISE Order who are not Parties to this Consent Decree.

(b) If the Settling Defendants provide evidence and supporting documentation to DTSC in accordance with Health and Safety Code section 25356.1.3 concerning the potential liability of any other person with respect to the Facility, then DTSC will evaluate the information accordingly and take such actions as deemed appropriate in DTSC's sole discretion. These actions may include, but are not limited to, notice letters, information requests, issuing final determinations of non-compliance with the ISE Order, and judicial and administrative enforcement actions, or no action.

(c) DTSC shall work in good faith to provide the Settling Defendants with reasonable access to those BKK documents concerning waste disposal to which BKK allows DTSC to assume control.

9.3 Within seven (7) months of lodging of this Consent Decree, the Settling Defendants shall provide written notice to DTSC of their intent to commence negotiations on a settlement agreement that will supercede this Consent Decree.

9.4 The Parties may, by mutual written agreement, and with approval of the court, extend some or all of the obligations and related provisions of this Consent Decree.

9.5 The Settling Defendants shall inform DTSC at least four (4) months before the date the obligations of this Consent Decree terminate as to whether they intend to extend this Consent Decree.

## X. GENERAL PROVISIONS

10.1 Project Coordinators. Settling Defendants' Project Coordinator is Roberto Puga, P.G. of Project Navigator, Ltd. Settling Defendants shall promptly notify DTSC in writing at least seven (7) working days before any proposed change in the identity of the Project Coordinator. Settling Defendants shall obtain approval from DTSC before the new Project Coordinator performs any work under this Consent Decree. DTSC's Project Coordinator is Don Plain, Chief, Emergency

Response and Special Projects Branch, Site Mitigation and Brownfields Reuse Program. DTSC's Project Coordinator will be responsible for overseeing Settling Defendants' implementation of this Consent Decree.

10.1.1 Each Project Coordinator shall be responsible for designating a person to act in her/his absence. All communications between DTSC and Settling Defendants concerning the Work to Be Performed shall be directed through the Project Coordinators.

10.2 Project Engineer/Geologist. The Work to Be Performed pursuant to this Consent Decree shall be under the direction and supervision of a qualified professional engineer or a professional geologist in the State of California, with expertise in hazardous substance site management and post-closure care of landfills. On January 21, 2005, the Settling Defendants provided the name, address, telephone number and resume of Mr. Roberto Puga, P.G. to serve as interim Project Geologist along with the statement of qualifications of Mr. Puga's firm, Project Navigator, Ltd. Within seven (7) days of a) the Effective Date of this Consent Decree or b) the date upon which the Settling Defendants fully commence the Essential Activities and Critical Task and other work pursuant to Section IV herein, whichever is earlier, Settling Defendants shall submit supplemental resumes and/or statements of qualifications as appropriate. Settling Defendants shall promptly notify DTSC in writing at least seven (7) working days before any proposed change in the identity of the Project Engineer/Geologist. Settling Defendants shall obtain approval from DTSC before the new Project Engineer/Geologist performs any work under this Consent Decree.

10.3 Monthly Summary Reports. After the end of the first month after a) the Effective Date of this Consent Decree or b) the date upon which the Settling Defendants fully commence the Essential Activities and Critical Task and other work pursuant to Section IV herein, whichever is earlier, and on a monthly basis thereafter, Settling Defendants shall submit to DTSC a Monthly Summary Report

of their activities under the provisions of this Consent Decree. The reports shall be received by DTSC by the 15th day of each month and shall describe:

(a) Specific actions taken by or on behalf of Settling Defendants during the previous calendar month;

(b) Actions expected to be undertaken during the current calendar month;

(c) All planned activities for the next month;

(d) Any problems or anticipated problems in complying with this Consent Decree; and

(e) All results of sample analyses, tests, and other data generated under this Consent Decree during the previous calendar month, and any significant findings from these data.

10.4 Quality Assurance/Quality Control (QA/QC). All sampling and analysis conducted by Settling Defendants under this Consent Decree shall be performed in accordance with QA/QC procedures submitted by Settling Defendants and approved by DTSC pursuant to this Consent Decree.

10.5 Submittals. All submittals and notifications from Settling Defendants required by this Consent Decree shall be sent simultaneously to:

Don Plain, Chief **[three copies]**
Attention: Andy Burrow
Emergency Response and Special Projects Branch
Site Mitigation and Brownfields Reuse Program
Department of Toxic Substances Control
8810 Cal Center Drive
Sacramento, California 95826-3200

With a copy to:

Jose Kou, Branch Chief **[one copy]**
Attention: Richard Allen
Southern California Permitting and Corrective Action Branch
Hazardous Waste Management Program
Department of Toxic Substances Control
1011 North Grandview Avenue
Glendale, California 91201-2205

10.6 Communications. All approvals and decisions of DTSC made regarding submittals and notifications will be communicated to Settling Defendants in writing by the DTSC Project Coordinator or his/her designee. No informal advice, guidance, suggestions or comments by DTSC regarding reports, plans, specifications, schedules or any other writings by Settling Defendants shall be construed to relieve Settling Defendants of their obligation to obtain such formal approvals as may be required by this Consent Decree.

10.7 DTSC Review and Approval.

10.7.1 All response actions taken pursuant to this Consent Decree shall be subject to the approval of DTSC. Settling Defendants shall submit all deliverables required by this Consent Decree to DTSC. DTSC shall revise and approve or reject the deliverables within 45 days of its receipt thereof. Once the deliverables are approved by DTSC, they shall be deemed incorporated into, and where applicable, enforceable under this Consent Decree.

10.7.2 If DTSC determines that any report, plan, schedule or other document submitted for approval pursuant to this Consent Decree fails to comply with this Consent Decree, subject to Settling Defendants' right to invoke dispute resolutions pursuant to this Consent Decree, DTSC may:

(a) Modify the document as deemed necessary and approve the document as modified; or

(b) Return comments to Settling Defendants with recommended changes and a date by which Settling Defendants must submit to DTSC a revised document incorporating the recommended changes.

10.8 Access for DTSC/Access to Property Owned by Others.

10.8.1 On November 4, 2004, BKK and DTSC entered into the Right to Enter Agreement, which requires BKK to provide full access to Parcel 3 to DTSC and its consultants, contractors and designees (Exhibit B).

10.8.2 For purposes of gaining access to the Facility, the Settling Defendants are deemed DTSC's designees.

10.8.3 Settling Defendants shall cooperate with DTSC to provide DTSC with access to the Subject Property consistent with applicable health and safety plans, laws and regulations. Settling Defendants shall provide access to data and facilitate access to laboratories used for analyses of the samples obtained pursuant to this Consent Decree at all reasonable times to employees, contractors, and consultants of DTSC. Nothing in this Paragraph is intended or shall be construed to limit in any way the right of entry or inspection that DTSC or any other agency may otherwise have by operation of any law.

10.8.4 The Settling Defendants shall also cooperate with DTSC to provide access to any other person not a party to this Consent Decree as directed by DTSC subject to applicable health and safety plans, laws and regulations. DTSC shall work with Settling Defendants to assure that all activities at the Subject Property are coordinated.

10.8.5 For property other than Parcel 3, to which access is required for the implementation of this Consent Decree and which is owned or controlled by persons other than Settling Defendants, Settling Defendants shall use best efforts to secure from such persons access for Settling Defendants, as well as DTSC, its representatives, and contractors, as necessary to effectuate this Consent Decree. For purposes of this Paragraph, "best efforts" shall include the payment of reasonable sums of money in consideration for access.

10.8.6 If any access required to complete the Work to Be Performed is not obtained, Settling Defendants shall promptly notify DTSC and shall include in that notification a summary of the steps Settling Defendants have taken to gain access. DTSC may, as it deems appropriate, assist Settling Defendants in obtaining access. Settling Defendants shall be subject to liability for costs incurred by DTSC in obtaining access.

10.9 Sampling, Data and Document Availability. Settling Defendants shall permit DTSC and its authorized representatives to inspect and copy all sampling, testing, monitoring or other data generated by Settling Defendants or on Settling Defendants' behalf pursuant to this Consent Decree. Settling Defendants shall submit all such data upon the request of DTSC. Copies shall be provided within seven (7) days of receipt of DTSC's written request. Settling Defendants shall inform DTSC at least seven (7) days in advance of all field sampling under this Consent Decree, and shall allow DTSC and its authorized representatives to take duplicates of any samples collected by Settling Defendants pursuant to this Consent Decree. Settling Defendants shall maintain a central depository of the data, reports, and other documents prepared pursuant to this Consent Decree.

10.10 Record Retention. All such data, reports and other documents shall be preserved by Settling Defendants for a minimum of ten (10) years after the conclusion of all activities under this Consent Decree. If DTSC requests that some or all of these documents be preserved for a longer period of time, Settling Defendants shall either comply with that request or deliver the documents to DTSC, or permit DTSC to copy the documents prior to destruction. Settling Defendants shall notify DTSC in writing, at least six (6) months prior to destroying any documents prepared pursuant to this Consent Decree.

10.11 Government Liabilities. The State of California shall not be liable for any injuries or damages to persons or property resulting from acts or omissions by Settling Defendants, or related parties specified in Paragraph 10.20 (Parties Bound), in carrying out activities pursuant to this Consent Decree, nor shall the State of California be held as party to any contract entered into by Settling Defendants or its agents in carrying out activities pursuant to this Consent Decree.

10.12 Extension Requests. If Settling Defendants are unable to perform any activity or submit any document within the time required under this Consent Decree, Settling Defendants may, prior to expiration of the time, request an

extension of the time in writing. The extension request shall include a justification for the delay. All such requests shall be in advance of the date on which the activity or document is due.

10.13 Extension Approvals. If DTSC determines that good cause exists for an extension, it will grant the request and specify a new schedule in writing. Settling Defendants shall comply with the new schedule incorporated in this Consent Decree.

10.14 Recoverable Costs. The Parties agree, and by entering this Consent Decree the Court finds, that all payments made to DTSC for Past Response Costs described in Paragraph 4.9 of this Consent Decree, all payments for Future Interim Response Costs, and all payments for Future DTSC Oversight Costs pursuant to this Consent Decree have been or are being made to reimburse DTSC for recoverable response costs as defined under CERCLA and the HSAA, incurred by DTSC with respect to releases or threatened releases of hazardous substances at the Facility in a manner that was and is consistent with the NCP.

10.15 Payments. All payments made by the Settling Defendants pursuant to this Consent Decree shall be made by a cashier's or certified check made payable to the "Department of Toxic Substances Control", and bearing on its face the project code for the Facility (Site # 300012-00) and the docket number of this Consent Decree. On each check, Settling Defendants shall state: "For BKK Costs". On each check, payments shall be further identified as either "BKK Future DTSC Oversight Costs", "BKK Future Interim Response Costs", or "BKK Past Response Costs", and shall be sent to:

Department of Toxic Substances Control
Accounting/Cashier
400 P Street, 4th Floor
P.O. Box 806
Sacramento, California 95812-0806

A photocopy of the check shall be sent concurrently to DTSC's Project Coordinator.

10.16 Severability. The requirements of this Consent Decree are severable, and Settling Defendants shall comply with each and every provision hereof, notwithstanding the effectiveness of any other provision.

10.17 Incorporation of Plans, Schedules and Reports. All plans, schedules, reports, specifications and other documents that are submitted by Settling Defendants pursuant to this Consent Decree are incorporated in this Consent Decree upon DTSC's approval or as modified pursuant to Paragraph 10.7, DTSC Review and Approval, and shall be implemented by Settling Defendants. Any noncompliance with the documents incorporated in this Consent Decree shall be deemed a failure or refusal to comply with this Consent Decree.

10.18 Modifications. This Consent Decree may only be modified in writing by mutual agreement by the Parties and approval of the Court.

10.19 Time Periods. Unless otherwise specified, time periods begin from the Effective Date of this Consent Decree.

10.20 Parties Bound. This Consent Decree applies to and is binding upon DTSC and its successors-in-interest and the Settling Defendants, and their corporate predecessors-in-interest, successors-in-interest and affiliated companies identified in Exhibit G. Settling Defendants shall provide a copy of this Consent Decree to all contractors, subcontractors, laboratories, and consultants that are retained to conduct any work performed under this Consent Decree, within fifteen (15) days after a) the Effective Date of this Consent Decree, b) the date upon which the Settling Defendants fully commence the Essential Activities and Critical Task and other work pursuant to Section IV herein, or c) the date of retaining their services, whichever is later. Settling Defendants shall condition any such contracts upon satisfactory compliance with this Consent Decree. Notwithstanding the terms of any contract, Settling Defendants are responsible for compliance with this Consent Decree and for ensuring that their successors-in-interest, affiliated

companies identified in Exhibit G, employees, contractors, consultants, subcontractors, agents and attorneys comply with this Consent Decree.

10.21 Joint and Several Obligations. The obligations of the Settling Defendants to carry out all activities and to make the payments required by this Consent Decree are joint and several. In the event of failure of any one or more Settling Defendants to conduct the Work to Be Performed pursuant to this Consent Decree and/or to make the payments required under this Consent Decree, the remaining Settling Defendants shall be responsible for such Work to Be Performed and for such payments. In the event of the insolvency or other failure of any one or more Settling Defendants to implement the requirements of this Consent Decree, the remaining Settling Defendants shall complete all of the requirements.

10.22 Change in Ownership. No change in ownership or corporate or partnership status relating to the Subject Property shall in any way alter Settling Defendants' responsibility under this Consent Decree. No conveyance of title, easement, or other interest in the Subject Property, or a portion of the Subject Property, shall affect Settling Defendants' obligations under this Consent Decree. Unless DTSC agrees that such obligations may be transferred to a third party, Settling Defendants shall be responsible for and liable for any failure to carry out all activities required of Settling Defendants by the terms and conditions of this Consent Decree, regardless of Settling Defendants' use of employees, agents, contractors, or consultants to perform any such tasks. Settling Defendants shall provide a copy of this Consent Decree to any subsequent owners or successors before ownership rights or stock or assets in a corporate acquisition are transferred.

XI. DELAY IN PERFORMANCE/STIPULATED PENALTIES

11.1 For each day that the Settling Defendants fail to deliver a deliverable in a timely manner, fail to perform work of acceptable quality, or otherwise fail to perform the work required by this Consent Decree, including Exhibits C and D, Settling Defendants shall be liable for stipulated penalties as set forth below.

Penalties begin to accrue on the day that the deliverable or performance is due, and continue to accrue until one of the following occurs: a) DTSC notifies Settling Defendants that it will conduct the work; or b) Settling Defendants submit the deliverable or perform the work in question and DTSC determines that the document or work is acceptable to DTSC (whichever is earlier). Payment of any Stipulated Penalties by Settling Defendants shall be due within thirty (30) days of receipt of a demand letter from DTSC.

11.1.1 For the following deliverables or work, stipulated penalties shall accrue in the amount of $500.00 per day, per violation, for the first seven (7) days of noncompliance, and $750.00 per day, per violation thereafter:

(a) Monthly reports as required by Paragraph 10.3; or

(b) Emergency response report as required by Paragraph 4.4.

11.1.2 For the following major deliverables or work, stipulated penalties shall accrue in the amount of $1,000 per day, per violation, for the first seven (7) days of noncompliance, and $2,500 per day, per violation thereafter,:

(a) Performance of any Essential Activity identified in Exhibit C; or

(b) Performance of the Critical Task identified in Exhibit D; or

(c) Immediately notifying DTSC of an emergency or taking immediate action to address an emergency as set forth in Paragraph 4.4. (Disputes over the appropriate response to be taken should be resolved through the dispute resolution provisions of this Consent Decree and shall not subject the Settling Defendants to Stipulated Penalties).

11.2 If the payment of Future Interim Response Costs required of the Settling Defendants by this Consent Decree are not made by the time specified in

Paragraph 4.7, the Settling Defendants shall be liable, for the following amounts for each date of delay in payment:

| Days of Delay | Payment per Day of Delay |
|---|---|
| 1-14 | $1,000/day |
| 15-60 | $2,500/day |
| Beyond 60 days | $5,000/day |

11.3 Settling Defendants may dispute DTSC's right to the stated amount of penalties by invoking the dispute resolution procedures under Paragraph 14.1 herein. Penalties shall accrue but need not be paid during the dispute resolution period. If Settling Defendants do not prevail upon resolution, all penalties shall be due to DTSC within thirty (30) days of resolution of the dispute. If Settling Defendants prevail upon resolution, no penalties shall be paid.

11.4 These stipulated penalties provisions do not preclude DTSC from pursuing any other legal remedies or sanctions that are available to DTSC because of the Settling Defendants' failure to comply with this Consent Decree. Payment of stipulated penalties does not alter Settling Defendants' obligation to complete performance under this Consent Decree.

XII. PUBLIC COMMENT

12.1 This Consent Decree shall be subject to a public comment period for not less than thirty (30) days after lodging with the Court. DTSC may modify or withdraw its consent to this Consent Decree if comments received disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper or inadequate.

XIII. EFFECTIVE DATE

13.1 The Effective Date of this Consent Decree shall be the date on which it is entered by the Court.

XIV. DISPUTE RESOLUTION

14.1 Any dispute that arises between the Parties with respect to an obligation under this Consent Decree shall, in the first instance, be the subject of good faith negotiations among the Parties. The Parties agree that they shall use their best efforts to resolve any dispute informally. In the absence of agreement, any Party may submit the matter to the Court for resolution.

XV. SIGNATORIES

15.1 Each undersigned representative of the Parties to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Parties to this Consent Decree.

15.2 This Consent Decree may be executed and delivered in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, but such counterparts shall together constitute one and the same document.

SO ORDERED , APPROVED, SIGNED, AND ENTERED THIS __6__ of __March______, 2006.

________//original signed by//________________

THE HONORABLE CHRISTINA A. SNYDER
UNITES STATES DISTRICT JUDGE

XV. SIGNATORIES

15.1 Each undersigned representative of the Parties to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Parties to this Consent Decree.

15.2 This Consent Decree may be executed and delivered in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, but such counterparts shall together constitute one and the same document.

FOR THE DEPARTMENT OF TOXIC SUBSTANCES CONTROL

Dated: October 25, 2005 By: //Original Signed By//
TIMOTHY J. SWICKARD
Chief Counsel

SETTLING DEFENDANTS' SIGNATURE PAGES FOLLOW:

AMERICAN HONDA MOTOR CO., INC.

DATE: October 7, 2005

By: //Original Signed By//
SIGNATURE

TIMOTHY J. CONLEY
NAME (printed or typed)

Vice President and General Counsel
TITLE (printed or typed)

ANADARKO E&P COMPANY LP

DATE: October 25, 2005

By: //Original Signed By//
SIGNATURE

DAVID J. OWENS
NAME (printed or typed)

Associate General Counsel
TITLE (printed or typed)

ATLANTIC RICHFIELD COMPANY, on behalf of itself and its affiliated entities

DATE: October 20, 2005

By: //Original Signed By//
SIGNATURE

H.C. WINSOR
NAME (printed or typed)

Regional Manager
TITLE (printed or typed)

BAYER CROPSCIENCE INC.

DATE: October 17, 2005

By: //Original Signed By//
SIGNATURE

BRIAN A. SPILLER
NAME (printed or typed)

Chairman, Stauffer Management Company LLC
TITLE (printed or typed)

AS AUTHORIZED LITIGATION AGENT FOR BAYER CROPSCIENCE INC.

CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY, a California corporation, on behalf of itself and on behalf of:

Chevron Oronite Company LLC, a Delaware limited liability company (successor-in-interest to Chevron Chemical Company); Chevron Corporation, a Delaware corporation (for Standard Oil Company of California, k/n/a Chevron Corporation, a Delaware corporation); Chevron U.S.A. Inc., a Pennsylvania corporation (for all Chevron affiliates involved in production, refining, and marketing); Chevron U.S.A. Inc., a Pennsylvania corporation (for Gulf Oil Corporation, k/n/a Chevron U.S.A. Inc., a Pennsylvania corporation, and all other Gulf affiliates); Texaco Downstream Properties Inc., a Delaware corporation (successor-in-interest to Texaco affiliates involved in refining, marketing and research); Chevron U.S.A. Inc., a Pennsylvania corporation (successor-in-interest to Texaco Exploration & Production Inc., and all other Texaco affiliates involved in production); Texaco Downstream Properties Inc., a Delaware corporation (successor-in-interest to Getty Oil Company affiliates involved in refining and marketing operations); Chevron U.S.A. Inc., a Pennsylvania corporation (successor-in-interest to Getty Oil Company affiliates involved in production); Chevron Pipe Line Company, a Delaware corporation,; Kewanee Industries Inc., a Delaware corporation (successor-in-interest to Harshaw Chemical Company and its affiliates); Texaco Downstream Properties Inc., a Delaware corporation (successor-in-interest to Basin Petroleum and its affiliates involved in refining and marketing operations); Chevron U.S.A. Inc., a Pennsylvania corporation (successor-in-interest to Basin Petroleum and its affiliates involved in production); and Texaco Inc, a Delaware corporation

DATE: October 20, 2005

By: //Original Signed By//
SIGNATURE

ROBERT R. JOHN
NAME (printed or typed)

Assistant Secretary
TITLE (printed or typed)

HUNTINGTON BEACH COMPANY, a California corporation

DATE: October 18, 2005

By: //Original Signed By//
SIGNATURE

FRANK G. SOLER
NAME (printed or typed)

Assistant Secretary
TITLE (printed or typed)

McFARLAND ENERGY, INC, a Delaware corporation (successor-in-interest to Seaboard Oil Company)

DATE: October 18, 2005

By: //Original Signed By//
SIGNATURE

FRANK G. SOLER
NAME (printed or typed)

Assistant Secretary
TITLE (printed or typed)

CITY OF LOS ANGELES, ACTING BY AND THROUGH THE LOS ANGELES DEPARTMENT OF WATER AND POWER

DATE: ____________________

By: //Original Signed By//
SIGNATURE

**[PENDING]**
NAME (printed or typed)

____________________
TITLE (printed or typed)

CONOCOPHILLIPS COMPANY, on behalf of itself and its affiliated entities

DATE: October 26, 2005

By: //Original Signed By//
SIGNATURE

WILLIAM A. KITCHEN
NAME (printed or typed)

Manager, Risk Management and Remediation
TITLE (printed or typed)

DUCOMMUN AEROSTRUCTURES, INC.

DATE: October 31, 2005

By: //Original Signed By//
SIGNATURE

JAMES S. HEISER
NAME (printed or typed)

Secretary
TITLE (printed or typed)

EXXON MOBIL CORPORATION, on behalf of itself, and its subsidiaries and affiliated entities

DATE: October 19, 2005

By: //Original Signed By//
SIGNATURE

ZANE K. BOLEN
NAME (printed or typed)

Area Manager Superfund
for
Andrew Warrell, Global Manager,
Major Projects
TITLE (printed or typed)

GENERAL MOTORS CORPORATION

DATE: October 10, 2005

By: //Original Signed By//
SIGNATURE

MICHELLE T. FISHER
NAME (printed or typed)

Attorney
TITLE (printed or typed)

HONEYWELL INTERNATIONAL, INC., on behalf of itself and its affiliated entities

DATE: October 14, 2005

By: //Original Signed By//
SIGNATURE

TROY J. MEYER
NAME (printed or typed)

Remediation Portfolio Director
TITLE (printed or typed)

NATIONAL STEEL AND SHIPBUILDING COMPANY

DATE: October 7, 2005

By: //Original Signed By//
SIGNATURE

LANE L. MCVEY
NAME (printed or typed)

Vice President, Business Affairs and Law
TITLE (printed or typed)

NORTHROP GRUMMAN CORPORATION, on behalf of itself and its affiliated entities

DATE: October 17, 2005

By: //Original Signed By//
SIGNATURE

KRAIG H. SCHEYER
NAME (printed or typed)

Vice President, Administrative Services
TITLE (printed or typed)

QUEMETCO, INC.

DATE: October 10, 2005

By: //Original Signed By//
SIGNATURE

DANIEL M. CROWLEY
NAME (printed or typed)

Attorney
TITLE (printed or typed)

ROHR, INC., on behalf of itself and its affiliated entities

DATE: October 7, 2005

By: //Original Signed By//
SIGNATURE

GREGORY B. PETERS
NAME (printed or typed)

Vice President and General Manager Operations
TITLE (printed or typed)

CHEMICAL WASTE MANAGEMENT, INC., on behalf of itself and its affiliated entities

DATE: October 11, 2005

By: //Original Signed By//
SIGNATURE

STEVEN D. RICHTEL
NAME (printed or typed)

Area Director, CSMG
TITLE (printed or typed)

SHELL OIL COMPANY, on behalf of itself and its affiliated entities

DATE: October 13, 2005

By: //Original Signed By//
SIGNATURE

HECTOR A. PINEDA
NAME (printed or typed)

Assistant Corporate Secretary
TITLE (printed or typed)

SOUTHERN CALIFORNIA EDISON COMPANY

DATE: October 19, 2005

By: //Original Signed By//
SIGNATURE

STEPHEN E. PICKETT
NAME (printed or typed)

Senior Vice President and
General Counsel
TITLE (printed or typed)

THUMS LONG BEACH COMPANY

DATE: October 19, 2005

By: //Original Signed By//
SIGNATURE

F. E. KOMIN
NAME (printed or typed)

President/General Manager
TITLE (printed or typed)

UNION CARBIDE CORPORATION

DATE: October 10, 2005

By: //Original Signed By//
SIGNATURE

SANDI VAN WORMER
NAME (printed or typed)

Authorized Representative
TITLE (printed or typed)

UNION OIL COMPANY OF CALIFORNIA, a California corporation, on behalf of itself and its affiliated entities

DATE: October 20, 2005

By: //Original Signed By//
SIGNATURE

JAMES J. DEAN
NAME (printed or typed)

General Manager
TITLE (printed or typed)

WASHINGTON MUTUAL BANK, on behalf of itself and its affiliated entities

DATE: October 21, 2005

By: //Original Signed By//
SIGNATURE

FAY L. CHAPMAN
NAME (printed or typed)

Senior Executive Vice President
TITLE (printed or typed)

WASTE MANAGEMENT COLLECTION AND RECYCLING, INC, on behalf of itself and its affiliated entities

DATE: October 10, 2005

By: //Original Signed By//
SIGNATURE

STEVEN D. RICHTEL
NAME (printed or typed)

Area Director, CSMG
TITLE (printed or typed)

WESTERN WASTE INDUSTRIES, on behalf of itself and its affiliated entities

DATE: October 10, 2005

By: //Original Signed By//
SIGNATURE

STEVEN D. RICHTEL
NAME (printed or typed)

Area Director, CSMG
TITLE (printed or typed)

XEROX CORPORATION

DATE: October 24, 2005

By: //Original Signed By//
SIGNATURE

PATRICIA A. CALKINS
NAME (printed or typed)

Vice President EH&S
TITLE (printed or typed)