**HINSON GRAVELLE & ADAIR LLP**
Douglas A. Gravelle (SBN 166110)
gravelle@hinsongravelle.com
K. Eric Adair (SBN 150650)
adair@hinsongravelle.com
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
Telephone: 661-294-0116

Attorneys for Plaintiffs BKK Working Group,
an unincorporated association, and certain of
its individual members

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BKK WORKING GROUP; et al.,<br><br>              Plaintiffs,<br><br>       vs.<br><br>ALBERTSONS COMPANIES, INC.; et al.,<br><br>              Defendants. | **Case No. 2:18-cv-05836-MWF-PLAx**<br><br>**PLAINTIFFS' [TWENTY-THIRD] STATUS REPORT** |

In accordance with the Court's August 7, 2018 Order granting Plaintiffs' Motion to Stay and Extend the Time to Serve Defendants, ECF No. 17, Plaintiffs (collectively referred to as the "BKK Working Group") submit the following Status Report and supporting Declaration of Douglas A. Gravelle.  Plaintiffs respectfully request that the Court schedule a status conference in April, or at the Court's earliest convenience, to discuss case management concerns and potential management strategies.  Specifically, in this Status Report and in the supporting Declaration of Douglas A. Gravelle, Plaintiffs provide a summary of their efforts to streamline this litigation.  The Status Report also proposes mechanisms to organize the service of process and the initial pleading phases of the litigation.  Plaintiffs further suggest that the companion case, captioned *BKK Working Group, et al. v.*

*1700 Santa Fe Ltd, et al.*, Case No. 2:18-CV-05810, be placed on the same or similar schedule. These proposals are reflected in the attached [Proposed] Case Management Order No. 1, which Plaintiffs respectfully submit for the Court's consideration.

## I.   BRIEF FACTUAL AND PROCEDURAL BACKGROUND

This matter concerns the BKK Class I Landfill in West Covina, California ("Class I Landfill"). The Class I Landfill has been owned and/or operated by BKK Corporation ("BKK") and/or other third parties from approximately 1969 through the present. *See* Declaration of Douglas A. Gravelle in Support of April 8, 2024 Status Report ("Gravelle Decl."), ¶ 3.

Between approximately 1969 and 1984, BKK accepted manifested hazardous substances, and hazardous substance-containing municipal waste for disposal at the Class I Landfill. *Id.* at 4. In 1984, BKK stopped accepting manifested hazardous substances, but continued accepting hazardous substance-containing municipal waste. BKK ceased accepting all waste at the Class I Landfill in 1987. *Id.* at 5.

In 2004, BKK notified the State of California that it was no longer financially capable of maintaining the closed Class I Landfill. *Id.* at 6. With the historical owner/operator claiming it was unable to close the Landfill and manage its post-closure care, the State notified several dozen former customers of the Class I Landfill and requested that they assume those obligations. *Id.* at 7. Certain of these former customers formed the BKK Working Group, an unincorporated association of approximately 50 former customers whose members have addressed or are addressing conditions at the Class I Landfill under three separate consent decrees reached with the State of California. *Cal. Dep't of Toxic Substances Control v. Am. Honda Motor Co.*, No. 05-CV-00746 (C.D. Cal.) (First Consent Decree entered by the Court on March 9, 2006, which among other things, required certain members of the BKK Working Group to perform specific emergency activities at the BKK

Class I Landfill);[1] *Cal. Dep't of Toxic Substances Control v. Am. Honda Motor Co., Inc.,* No. 10-CV-03378 (C.D. Cal.) (Second Consent Decree entered by the Court on August 10, 2010, which, among other things, obligates certain members of the BKK Working Group to perform certain environmental response actions and to conduct an Engineering Evaluation/Cost Analysis ("EE/CA") for the BKK Class I Landfill); *Cal. Dep't of Toxic Substances Control v. Am. Honda Motor Co., Inc.,* No 15-CV-00729 (C.D. Cal.) (Third Consent Decree entered by the Court on July 24, 2015, which, among other things, obligates certain members of the BKK Working Group to perform certain environmental response actions at the BKK Class I Landfill and conduct a groundwater Remedial Investigation and Feasibility Study ("Groundwater RI/FS")). *Id.* at 8-12. All three Consent Decree Actions are or were before the Honorable Dean D. Pregerson.

Plaintiffs filed the operative complaint in this action against potentially responsible parties who generated and/or arranged for the disposal of manifested hazardous substances at the Class I Landfill but have not contributed to the remedial activities ("Defendants") to recover costs that the BKK Working Group has incurred and continues to incur to investigate and remediate the Class I Landfill. *Id.* at 14. On July 2, 2018, Plaintiffs also filed a complaint against additional Defendants in the case, captioned *BKK Working Group, et al. v. 1700 Santa Fe Ltd.., et al.*, Case No. 2:18-CV-05810, which is also pending before this Court. Together there are currently 908 Defendants between these two actions. As set forth in more detail below, service of process has been stayed in each action.

## II.   STATUS OF LITIGATION AND SETTLEMENT INITIATIVE

When Plaintiffs filed the two lawsuits in 2018, over 1,000 parties were named as defendants. Shortly thereafter, the Court stayed both actions and extended the time to serve the Complaints to allow Plaintiffs and the lead regulatory

---

[1] The First Consent Decree is no longer operative.

agency overseeing the remedial activities of the Class I Landfill, the State of California Department of Toxic Substances Control ("DTSC"), to make comprehensive settlement offers prior to serving the Complaint.  To date, Plaintiffs and DTSC have finalized settlements with 35 parties and affiliates, including some Defendants, (who have since been dismissed with prejudice from the litigation) and are in the process of finalizing settlements with additional 49 parties, for a total of 84 settlements.  *Id.* at 23.

In addition, as described in the prior Status Reports, Plaintiffs sought tolling agreements with the Defendants.  *Id.* at 16.  To the extent a Defendant entered into a tolling agreement, Plaintiffs dismissed the Defendant without prejudice from the lawsuits.  This process allows Plaintiffs and tolled parties to work cooperatively towards a settlement outside of litigation.  To date, Plaintiffs have entered into tolling agreements with approximately 200 Defendants and followed up with dismissals.  *Id*.

In June of 2023, this Court set July 22, 2024 as the service deadline.  Since that time, Plaintiffs have continued their efforts to obtain settlements from the Defendants and tolled parties.  Plaintiffs, in collaboration with DTSC, sent out over 511 settlement offers to Defendants in the two related actions.  Gravelle Decl., ¶ 20.  As a result of these efforts, there are an additional 49 settlements in the process of being finalized.[2]  *Id.* at 20-22.  Plaintiffs anticipate additional settlements, so the number of settlements will likely increase by the service deadline.  *Id.* at 23.  Plaintiffs also continue to identify Defendants that are dissolved, defunct, merged out, or otherwise no longer in existence.

### III.   AMENDED COMPLAINT

As a result of Plaintiffs' review of the status of Defendants, the operative Complaints will have to be amended to identify and/or update the identity of certain

---

[2] DTSC tracks the progress of these settlement efforts on a website: https://dtsc.ca.gov/third-party-initiative-cost-recovery/.

Defendants and/or their corporate successors, clarify the relationships of certain Defendants, add additional Defendants, and dismiss Defendants that have either settled or entered into tolling agreements. Plaintiffs respectfully request leave to file amended complaints by April 29, 2024 to address these and other issues.

## IV.   PROPOSED CASE MANAGEMENT CONCEPTS

As of the date of this submission, there remain a total of 908 Defendants in both lawsuits that will be provided notice of the Complaint and a waiver of service of the summons by the July 22 deadline to the extent those Defendants are still in the case at that time. Plaintiffs are mindful of the administrative challenges and resource demands that will be placed upon Court staff by virtue of simultaneous service of the complaints on so many Defendants. Plaintiffs therefore respectfully request to address these challenges through a Case Management Order containing the following or similar provisions:

### A.   Continued Stay of Service of the Complaint on Settling Defendants

To date, Plaintiffs have reached settlements in principle with 49 Defendants, with more settlements anticipated in the coming weeks. Before these settlements can be finalized, DTSC must initiate and complete a public notice process for each settlement that can each take three to four months and potentially longer to complete. While the parties await completion of the public notice process, Plaintiffs propose that the Court continue the stay and further extend the time to serve the Complaint as to these settling Defendants and others with whom Plaintiffs reach settlements in principle between now and the service deadline. Staying service would cause no prejudice to any party and would allow those parties that are willing to resolve their liabilities to do so without having to spend additional resources answering the complaint.

In addition, there are approximately 550 parties who have executed tolling agreements and are not named as Defendants in either lawsuit. Currently, Plaintiffs are discussing potential settlements with these tolled parties (settlement demands

were recently sent to most of these tolled parties) and Plaintiffs presently do not plan on adding them as named Defendants unless they fail to extend their tolling agreements or the Court orders joinder of all tolled parties.

### B. Managed Service of the Complaint

To minimize the anticipated case management impact of simultaneous service of hundreds of parties, maximize the potential for further settlements, and roll out the active component of this litigation in an organized fashion, Plaintiffs propose to provide the Defendants with notice of the Complaint and a request to waive service of the summons in tranches of 50, starting with the Defendants alleged to have contributed the lowest volume of waste and working upwards from there until service is effectuated on all non-settling Defendants. Plaintiffs will begin this process on the non-settling Defendants starting in April 2024 and ending on or before July 22, 2024.

### C. Waiver of Summons

In an effort to preserve the Court's resources and avoid unnecessary expense, Plaintiffs propose to effectuate service by seeking a waiver of summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure ("Rule 4(d)"). As required under Rule 4(d), Plaintiffs will notify each Defendant that an action has been commenced and request that the non-settling Defendants waive service of the summons. This notice will include all of the following:

1. the Complaint;
2. this Court's Standing Order;
3. any Case Management Orders entered by this Court;
4. two copies of the wavier form required by the Federal Rule of Civil Procedure 4(d), including an explanation of the consequences for failure to execute the waiver;
5. a prepaid envelope for returning the waiver form; and

6. notification that the Defendant must return the waiver within 30 days of receipt.

Under this proposed schedule, by July 22, 2024, Plaintiffs will serve all non-settling Defendants with notice of the Complaint and a request for waiver for service of summons pursuant to Rule 4(d). Under this schedule, the final tranche of Defendants will be required to return their waivers by August 21, 2024. Effectuating service in this manner will preserve judicial resources by minimizing the number of summonses to be issued. To the extent any Defendants in the final tranche do not return the waiver by the return deadline, Plaintiffs would request a summons from the Court as soon as practicable and be allowed to effectuate service on these Defendants promptly upon receipt of the summons.

### D. Initial Disclosures and Stay of Discovery

#### 1. Initial Disclosures

To maximize the benefit to the parties and the Court from the exchange of initial disclosures, Plaintiffs suggest that the exchanges be done in a manner most likely to facilitate early settlements and further narrow the scope of this litigation. Plaintiffs propose an initial exchange of information on a rolling basis, with a deadline 60 days after either (1) the return of Rule 4(d) waiver of service of process or (2) service of the Complaint and summons. Plaintiffs propose that the parties should exchange the following information:

Plaintiffs: (1) all manifests and other related documents linking Defendants to the BKK Class I Landfill, and (2) technical reports concerning the investigation and remediation of the BKK Class I Landfill.

Defendants: (1) insurance information for the relevant time period and (2) records relating to the BKK Class I Landfill, including manifests, weigh tickets, invoices, payment history, correspondence, and other related documents.

Further, Plaintiffs propose that any production of initial information by Defendants

would not constitute a waiver of any argument that the Court lacks jurisdiction over the Defendant.

### 2. Stay of Discovery

Plaintiffs propose a mandatory stay of discovery following the initial disclosures. The parties would use this time to assess (or reassess) settlement with the benefit of additional key information, before expending significant time and resources issuing and responding to discovery. Plaintiffs would propose that the stay on additional discovery remain in place until April 20, 2025, or such later date as the Court directs.

### 3. Common Document Repository

Plaintiffs propose that a common document repository be established and paid for by all parties to facilitate the exchange of information and alleviate the substantial burden associated with service of initial disclosures on hundreds of disparate parties. A common document repository would, moreover, facilitate settlement by ensuring that each party has access to the same information. Plaintiffs suggest that the cost for the common document repository would be shared 50-50 between Plaintiffs and Defendants.

## E. Responsive Pleadings

Responsive pleadings should be coordinated and filed jointly to the fullest extent possible. A single coordinated answer that Defendants could opt in to and/or coordination among the Defendants on Rule 12 motions would drastically reduce the complexity of the litigation, the volume of paperwork, and the need for judicial resources to be spent processing hundreds of individual responses. To give the Defendants sufficient time to coordinate, Plaintiffs would propose February 19, 2025 as the date by which Defendants would file a coordinated answer and/or coordinated Rule 12 motions.

F. **Joinder of Third Parties**

To allow for the exchange of initial information, identification of third parties, and Rule 12 Motion practice, Plaintiffs suggest that the joinder of third parties under Rule 14 of the Federal Rules of Civil Procedure be stayed until further order of the court.

G. **Defendant's Liaison Counsel**

Plaintiffs propose that Defendants should form a leadership structure including liaison counsel with authority to appear, speak, and file pleadings on common issues. This would allow for coordination amongst the Defendants and thereby avoid substantial duplication in virtually every area of the case. This leadership structure should be established as early as practicable to facilitate coordination of the Master Answer and/or Rule 12 motions, but in no event later than December 20, 2024.

H. **Further Meet and Confer of Parties**

Upon appointment of Defendants' Liaison Counsel, Plaintiffs suggest that the parties should meet and confer on a further Case Management Order focused on the structure of the litigation and next steps.

V. **PROPOSED CASE MANAGEMENT SCHEDULE**[3]

| | |
|---|---|
| April 29, 2024 | Deadline for filing Amended Complaints |
| April 29, 2024 | Begin notification of Complaint and Request for Waiver of Summons in tranches |
| July 22, 2024 | Final deadline for notification of Complaint and Request for Waiver of Summons |
| Aug. 20, 2024 | Final deadline to return Waiver of Service of Summons |
| Sept. 21, 2024 | Deadline to serve Defendants who fail to return Waiver of Service of Summons |

---

[3] As noted above, Plaintiffs propose that this schedule would not apply to those Defendants who are in the process of settling or to tolled parties.

| | | |
|---|---|---|
| | Nov. 19, 2024 | Final deadline for exchange of initial information |
| | Dec. 20, 2024 | Deadline for Notice of Establishment of Defendants' Leadership Counsel |
| | January 6, 2025 | Deadline for Parties to meet and confer regarding further Case Management Order |
| | Feb. 19, 2025 | Coordinated Answer to Amended Complaint or Coordinated Rule 12 Motions Due |
| | Feb. 19, 2025 | Defendant Separate Statement of Affirmative Defenses Due |
| | April 20, 2025 | Lifting of Discovery Stay, unless further order of Court |

## VI. REQUEST FOR STATUS CONFERENCE

Plaintiffs respectfully request that the Court schedule a status conference in April, or at the Court's earliest convenience, to address these case management suggestions and issues. To assist the Court, Plaintiffs have submitted the supporting Declaration of Douglas A. Gravelle and provided a proposed Case Management Order for the Court's consideration.

## VII. STATUS OF RELATED CASE

On July 2, 2018, Plaintiffs filed a related case, captioned *BKK Working Group, et al. v. 1700 Santa Fe Ltd., et al.*, Case No. 2:18-CV-05810, which is currently pending before this Court. This related case also is stayed until July 22, 2024.

## VIII. CONCLUSION

In accordance with the Court's prior orders, Plaintiffs will submit the next Status Report by July 8, 2024 unless the Court directs otherwise.

| | |
|---|---|
| Dated: April 8, 2024 | HINSON GRAVELLE & ADAIR LLP |
| | By /s/ Douglas A. Gravelle |
| | Douglas A. Gravelle, |
| | Attorneys for Plaintiffs |
| | BKK WORKING GROUP, an unincorporated association, and individual members identified above |